## KELLY & MITCHELL vs. MORRIS et al.

Equity will not, by injunction *pendente lite*, restrain a party *in possession* of property, purchased from one *in peaceable possession*, under a Sheriff's sale, in the use and enjoyment of that property, at the suit of a purchaser of the same property, from another, claiming adversely to the first vendor; complainant and defendant, each having been ignorant, at the time of his purchase, of any title adverse to that of his vendor.

In Equity, in Fulton Superior Court. Decided by Judge Bull, at the October Term, 1859.

Alexander Kelly and Pleasant A. Mitchell, prepared and presented to his Honor, Orville A. Bull, the presiding Judge of the Coweta Circuit, their bill in equity, in which they alleged: That in the year 1852, the Augusta, Atlanta and Nashville Magnetic Telegraph Company was incorporated by Acts of the Legislatures of Georgia and Tennessee, and clothed by said Acts of incorporation with power to construct a telegraph line from Augusta, in the State of Georgia, via Atlanta, to the city of Nashville, in the State of Tennessee; that after said company was organized, it went on to construct said telegraph line, and, at great expense, completed the same in the year 1855; that the necessary expenditures for its construction were so heavy, as to exhaust all the money paid in by the subscribers and stockholders, and still leave the company in debt; that in order to raise funds to put the line in good order, and to pay off the indebtedness against it, a meeting of the stockholders was held on the 17th of October, 1854, at which it was resolved that Enoch R. Mills, the president of said company, be authorized to borrow money for the use and benefit of said company, and to execute a mortgage or mortgages upon said telegraph line, to secure the payment of the sum so borrowed; that, pursuant to the authority of said resolution, the said president, Enoch R. Mills, did borrow from Samuel Clark the sum of three hundred and sixty dollars, and from William Pybus the sum of twenty-five hundred dollars, and from Samuel Scott the sum of three hundred and seventy-five dollars, and executed mortgages to the said persons upon the said telegraph line and its appurtenances, to secure the payment of said sums of money; that said company failing to pay the said sums of money at

the time the same was due and payable, the said mortgages were, upon application of the mortgagees, foreclosed by a decree of the Court of Chancery, of the county of David-son, city of Nashville, and State of Tennessee, at the No-vember term, in the year 1856, and by said decree, the said telegraph line and appurtenances, including the wire, posts, insulators, office furniture, and twenty-five telegraph instru-ments at the different offices of said company, and the right of way, both in Georgia and Tennessee, were all ordered to be sold; and in pursuance of said order and decree, the same were sold on the 30th day of August, 1856, in the city of Nashville, at public outcry, to the highest bidder, at which sale James Kelly and William Kelly became the purchasers, at the price of thirty-five hundred and eighty-five dollars, they being the best and highest bidders. That by agreement between the plaintiffs in said decree and the said purchasers, the said plaintiffs sold to the said James and William Kelly all their interest in said decree, and the same was transferred upon the execution docket of said Court, the said Kellys as-suming to pay the costs of the proceedings in said cases; that by a further decree of said Court, the title of the Au-gusta, Atlanta and Nashville Magnetic Telegraph Company, to all the property of said company in the States of Tennes-see and Georgia, to wit: the wires on said line, the posts and insulators, the office furniture and twenty-five telegraph in-struments at the different offices, and the right of way afore-said, was divested out of said company and vested in the said James and William J. Kelly; that Alvin D. Hammett, of the county of Cherokee, and John H. Glover, then of the county of Cobb, in said State of Georgia, but since deceased, both of whom were stockholders in said company, and represented themselves as holding large claims against said company, some of which had been reduced to judgment, were both pres-ent on the · day of the sale aforesaid, or said Hammett was present at said sale, representing himself and said Glo-ver, and then and there assented to the same, and agreed with the said James and William J. Kelly, that they, the said Kellys, should become the purchasers of said property at said sale, and take the same, discharged and free from any lien, which they, the said Hammett and Glover, might have on the said property by virtue of said judgment, or other-wise, and that they would take mortgages from the said Kel-

lys upon that part of the property of said company within the State of Georgia, to secure them in the payment of their said claims; that, in accordance with such agreement, the said Kellys did become the purchasers at said sale, and did execute to said Hammett and Glover mortgages, as aforesaid, to secure them in their claims aforesaid, all of said claims being then and there added up and included in two notes, given therefor by one Charles C. Clute—the note payable to said Glover being for the sum of eight hundred and fifty-five dollars and fifty cents, and the one payable to said Hammett being for thirteen hundred and sixty dollars and seventy-five cents; that, by virtue of the agreement and the execution of the notes and mortgages to said Glover and Hammett, as aforesaid, all the said property of said company became vested in the said Kellys, discharged and free from any lien which might previously have existed against the same; that on the 10th of May, 1859, the said James Kelly and William Kelly, by their attorney in fact, Enoch R. Mills, sold and conveyed to the complainants all that portion of said telegraph line and property within the State of Georgia, to wit: the wire, posts, insulators, office furniture and instruments in each office, and the right of way or franchise of said company for and in consideration of five thousand dollars, paid therefor by complainants, being a full and fair price for the same; that said sale and conveyance, by the Kellys, to complainants, was by written deed, by virtue of which complainants became the lawful owners and proprietors of the said property so conveyed, and as such were entitled to the profits arising therefrom; that complainants are informed and believe, that the said Alvin D. Hammett, and one Edmund J. Camp, of the county of Cobb, did, in the latter part of the year 1858, or the first of the year 1859, for the purpose of practicing a fraud upon the *bona fide* owners of said telegraph line, procure the same to be levied on, by virtue of sundry *fi. fas.*, which, as complainants have been informed and believe, had been obtained and were in the possession of, and under the control of the said Hammett at the time of the sale of the said telegraph line, and other property of the said company, at the city of Nashville, under the decree aforesaid, and that said *fi. fas.* were included in the settlement, made at the time of said sale, and as complainants are informed and believe, and charge were kept open,

Kelly & Mitchell vs. Morris et al.

fraudulently, by said Hammett; that said telegraph line and appurtenances, or a part thereof, was sold under said *fi. fas.,* at sheriff's sale, in several counties in the State of Georgia, and bought by said Hammett at a very small and inadequate price, by virtue of which purchase said Hammett assumed to be the true owner and proprietor of said line and property, and took possession of the same, well knowing that all the title to said property had been divested out of said company, and vested in the said Kellys; that the complainants have been informed, and believe, that said Hammett has but recently sold all that part of said telegraph line, with its appurtenances, within the State of Georgia, to a company of gentlemen residing in Lynchburg, and State of Virginia, and has given them the possession thereof; that said company consists, as complainants are informed, and believe, of the following persons, to wit: Dr. William S. Morris, —— Crenshaw, John S. Langhorn and Charles Scott, who, after receiving possession of said line and property, delivered the possession of the same to Charles T. Campbell, of the county of Fulton; Augustus W. York, of the county of Cobb, and C. W. Presley, of the county of Cass, in said State of Georgia, and that said Campbell, York and Presley are now using and working said line, and all its equipments and appurtenances, and receiving the profits of the same, and appropriating said profits to their own use, or to the use of the said Morris and his said associates, refusing to the complainants any and all control of said line and its fixtures, or any part of the profits thereof, which profits are of the monthly value of two hundred dollars, or other large sum; that the portion of the telegraph line and fixtures so used and controlled by the said Campbell, York and Presley, is worth the sum of two thousand dollars, or other large sum, of all which the complainants are deprived by the fraudulent conduct of the said Hammett and his confederates; that said sale, by Hammett to Morris and his associates, was made for the purpose of carrying out the fraud, and to make it more difficult for complainants to ferret out the same, and obtain their rights; that said Campbell, York and Presley are men of very slender means, and wholly unable to answer to the complainants, in damages for the injuries which they have sustained and may yet sustain in the premises.

The bill prays a discovery as to the facts; an accounting

as to the profits of the telegraph line and fixtures; an injunction restraining further use of the line; and for general relief.

When the bill was presented to Judge Bull for his sanction, he granted a rule *nisi,* calling upon the defendants to show cause, on the second day of the October Term, 1859, of Fulton Superior Court, or so soon thereafter as counsel could be heard, why the injunction prayed for in the bill should not be granted.

At the time and place set apart for the hearing, the defendants appeared, and for cause, why the injunction should not be granted, showed:

*First.* The obligation and contract entered into by said Hammett with Clute, at the time of the sale in Nashville, Tennessee, showing that Hammett bound himself to transfer, assign and control the *fi. fas.,* then owned by Hammett, to Clute so soon as Clute should pay all the notes which he then gave, as they become due.

*Second.* The affidavit of Alvin D. Hammett to the same effect, and, also, that Clute had never paid one cent on the note, although all of them had long since become due, and were due when the telegraph line in Georgia was levied on by virtue of Hammett's *fi. fa.;* that Clute is insolvent, and had gone to parts unknown, and that neither of the Kellys had ever paid anything on the notes, but refused to do so on application of Hammett's attorney, who went to Tennessee for the purpose of collecting the money; that his said attorney returned from Tennessee, and reported (as he believed, truly), that the said Kellys were also insolvent, and did not expect to pay anything, either on their own, or Clute's indebtedness, to said Hammett.

*Third.* That, according to the case made by the bill, the complainants have no title to the telegraph line, because the Chancery Court of the State of Tennessee had no jurisdiction to decree a sale of the line in Georgia, nor did the Master, or Commissioner, or sheriff, of Tennessee, have any authority, or power, to sell, in Tennessee, the line and fixtures in Georgia.

*Fourth.* That William S. Morris and his associates have the legal title to said telegraph line, being *bona fide* purchasers for a valuable consideration without fraud or notice of fraud.

Upon the hearing, the presiding Judge discharged the rule *nisi,* and refused the injunction, and it is to reverse this decision that this writ of error is prosecuted.

EZZARD & COLLIER, for the plaintiffs in error.

IRWIN & LESTER, for the defendants in error.

*By the Court.*—JENKINS, J., delivering the opinion.

The first error assigned against the judgment of the Court below, is, "That the Court erred in deciding that the purchaser, at a sale made under a decree of a Court of Chancery, upon a bill filed in the State of Tennessee, for the purpose of foreclosing a mortgage upon the whole telegraph line and fixtures, furniture, etc., acquired no title to that portion of the said property lying in the State of Georgia."

This is an objection to the jurisdiction of the Court of Chancery in Tennessee. This point is not free from difficulty, arising chiefly from the meager statement of facts in the transcript.

Unwilling to decide so important a question upon insufficient knowledge of the facts involved, and, finding that the other question, raised by the defendants, in the Court below, as cause shown against the granting of the injunction prayed, must control our judgment, we pass at once to its consideration.

The only other error assigned, is, that "The Court below erred in refusing to grant said injunction upon the facts stated in said bill, and the evidence exhibited." This brings us to the consideration of the case upon its merits, as made in the bill, and we give the plaintiffs in error the benefit (for the purposes of the argument) of a concession of jurisdiction in the Court of Chancery in Tennessee. Plaintiffs in error claim under J. and W. J. Kelly, who purchased at a sale made under a decree of that Court. Defendants in error hold, under Hammett, who purchased, at sheriff's sales, in the several counties in Georgia, through which the telegraphic line passes, and in which the "fixtures, furniture," etc., were found; these sales having been made under certain common law judgments, obtained in Georgia, against the original company, in favor of Hammett and Glover, older than the

mortgage liens, under which J. and W. J. Kelly purchased, and of which Georgia judgments J. and W. J. Kelly had notice at the time of their purchase. Plaintiffs in error predicate their claim for relief, upon the averment of fraud, committed by Hammett (representing Glover as well as himself). The averment is, that Hammett, being present at the sale under the decree in Tennessee, entered into an agreement with J. and W. J. Kelly, for himself and Glover, anterior to the sale, by which he bound them to accept in lieu of their judgment liens, the notes of one Clute, secured by mortgages of J. and W. J. Kelly, of so much of said telegraph line and other property as were in the State of Georgia, which notes and mortgages were actually given, and accepted by Hammett. They further allege, that the subsequent sale of the property within the State of Georgia, under these identical judgments, was fraudulent and void as against themselves, who were innocent purchasers, without notice of these judgments. The defendants, in the Court below, incorporated in their response to the rule *nisi*, requiring them to show cause why an injunction should not be granted, the affidavit of Hammett (who was not a party to the bill), negativing this averment, and alleging, that by the agreement, entered into at the time of the sale in Tennessee, aforesaid, he bound himself to transfer his judgment and *fi. fa.* to Clute, upon the payment, by Clute, of his notes so given—and he appends to his affidavit a copy of his said agreement. Further, he states, that, at the time of the maturity of Clute's notes, he was insolvent and had absconded without having paid any portion of them; that, after waiting a considerable time, he sent a special messenger to the Messrs. Kelly, to demand payment of Clute's notes, that they declared themselves unable to pay the notes, and did not expect to do so at any time—whereupon, he, Hammett, proceeded to levy upon, and sell the property lying in Georgia. This affidavit and agreement were before the Court below, as a part of defendants' response to the rule *nisi*, and came before this Court in the transcript of the record.

There is something mysterious in Clute's connection with the negotiation in Tennessee; but J. and W. J. Kelly, under whom plaintiffs claim, must have understood and adopted that connection, whatever it may have been. We must suppose them to have been cognizant at the time of Hammett's

obligation to transfer those *fi. fas.* and judgments to Clute, upon the payment of his notes—and this is wholly incompatible with plaintiffs' averment, that by the negotiation in Tennessee the judgments were considered satisfied, and were fraudulently kept open, and used subsequently. J. and W. J. Kelly, under such a showing, would not have been entitled to the relief asked, and the plaintiffs in error can be in no better condition. Defendants' showing upon this point was abundantly sufficient. It is insisted, however, that the sale by Hammett to defendants was intended to consummate and cover up his fraud, and that plaintiffs in error, being innocent purchasers, without notice of these judgments, are entitled to protection. There are several answers to this view:

1. As already shown, the response to the rule *nisi* removes the imputation of fraud from Hammett, in the original transaction; and there was, therefore, no fraud to be averred or consummated by the sale to defendants.

2. Although the chronological order of the events, narrated by plaintiffs in their bill, is not very clear, we are constrained to infer from their statements that this property had been sold in Georgia by the sheriff, and purchased by Hammett, and had passed legally and peaceably into his possession, before plaintiffs purchased from J. and W. J. Kelly. The fact, then, that these vendors were not in possession of the property sold, was sufficient notice to put them on the alert, to stimulate them to diligent inquiry into these vendors' title.

3. The bill does not charge upon the defendants either participation in the alleged fraud, or knowledge of it, as charged to have been practiced by Hammett. It charges fraud, and knowledge of fraud, upon no person, except Hammett, who is no party to the cause. Its allegation is that the defendants purchased from Hammett, then in peaceable possession, under a purchase at sheriff's sale.

We think the position of defendants decidedly better in every point of view than that of plaintiffs' in error—but if equal *only,* in other respects, by plaintiffs' own showing, it is better in this, that defendants are in possession fairly and legally acquired. The Court below was, therefore, right in refusing the injunction.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be affirmed.