The following opinion of HON. JAMES BARRETT, was delivered by him as Chancellor in November, 1863, and was then published in pamphlet. No appeal was taken from the decision, hence the questions involved were not decided in the supreme court, but as the decision and the opinion in support of it have been often cited with approbation, it is deemed advisable, upon the request of several members of the profession, and by permission of the Chancellor, to insert the opinion in a Volume of Reports.

CHEEVER AND HART, AND OTHERS *v.* RUTLAND AND BURLINGTON RAILROAD COMPANY, AND OTHERS.

*Equity. Injunction. Receivers. Conflict of Equity Jurisdiction. Mortgage.*

The ground on which courts of equity intervene, either by injunction or by the appointment of a receiver, is the preservation of the property and securities, either or both, which constitute the subject matter of the litigation pending the controversy.

But where the mortgagor or his assigns are in possession, and denying the right of the mortgagee to a foreclosure, the court will not, by preliminary injunction, predicated on the mortgagee's asserted right *at law*, as mortgagee, transfer to him the possession pending the litigation; the most that can be done in such cases, is to appoint a receiver for the purpose only of preserving the property, and its rents and profits, from waste and diversion.

And even were the object of the bill to enforce a specific provision in a deed for the taking of possession on default and demand of payment, and an injunction were asked for to effect a transfer of the possession pending the litigation the same rule and reason would apply as in case of a suit for the foreclosure of an ordinary mortgage, while the question of the right of possession should be in litigation, and would be effectual against the granting of an injunction.

Where a suit in chancery has been commenced in one county, and is still pending under an administrative or interlocutory decree, by the terms of which the rights declared by it, as belonging to the respective parties, are to be exercised under the order and direction of the court in that county, the assertion of those rights must be addressed to the court that decreed them, and cannot be enforced by an independent bill returnable to the court of chancery for another county.

While the court of chancery in each of the counties is the court of chancery of the State of Vermont, yet when sitting and acting in a given county, it is the court of chancery of the state of Vermont, in and for that particular county, and as such, is just as distinct from the court of chancery in and for any other county, as if it was a distinct and independent court.

BILL IN CHANCERY. The Rutland and Burlington Railroad Company, on the 1st of February, 1851, made a conveyance by deed in trust to secure $1,800,000 of bonds, to be issued, on which interest at seven per cent. was to be paid semi-annually; the principal to be paid in twelve years, to wit: ᵗthe 1st day of February, 1863.

In this deed it was provided that, on default of payment of principal or interest, as it fell due, for four months after demand of payment, the trustees might take possession of the railroad and all the property appertaining to, and connected with it, and hold and use the same, and apply the net proceeds in payment of the debt in arrear; with provisions in detail in this respect, and other provisions not necessary to be stated.

In August, 1853, the company made a second deed of like character, to secure $1,200,000 of other bonds, to be issued, subject to the former deed. In May, 1854, it made a third deed of like character, to secure $1,200,000 of other bonds, subject to the two prior deeds.

In November, 1853, the company had become largely indebted, and suits had been brought, and thereon the movable property of the company attached, and other attachments were likely to be made.

In this condition of affairs, the company made a deed of surrender of the road and property to the trustees under the second deed, and in February, 1854, another, and in June, 1854, a third like deed of surrender, to the same trustees ; each successive deed affirming the validity of the preceding. Said trustees took possession of said road and property upon the execution of said first deed of surrender, in November, 1853, and have ever since held the possession. In March, 1863, the trust under said second deed had become vacant by the death of the trustees, Thacher and Henshaw ; whereupon Smalley and Chapin were appointed temporary trustees, and held the office till July 12th, when Birchard and Stewart were appointed permanent trustees, and still hold the office.

The present bill is brought by the trustees under the first deed—Cheever and Hart,—joining several bondholders under said deed, against the Rutland and Burlington Railroad Company, and Birchard and Stewart, and several bondholders under the second and third deeds, with some other parties.

It was filed on the 24th day of July, 1863, with motions predicated upon the matters set forth in the bill, for injunctions, and, in the alternative, for the appointment of said Cheever and Hart or of some other person or persons receivers. Orders of notice were duly made for hearing on said motions.

In defence thereto some of the defendants made answer, some filed demurrers, some filed motions to dismiss, for various alleged causes. By adjournment from time to time the case, upon the motion for injunction to restrain the defendants—trustees—from hindering or preventing the orators—trustees—from taking possession of the road and property covered by said first deed, and holding and using the same ; or, in the alternative, for the appointment of receivers, came on to be heard at Woodstock on the 29th day of September. For the orators the case was argued by H. E. Stoughton, Esq., George F. Edmunds, Esq., and E. J. Phelps, Esq.,—Mr. Foster, Attorney General of Massachusetts, furnishing a brief of points and argument. For the defendants it was argued by Levi Underwood, Esq., P. T. Washburn, Esq., and William M. Evarts, Esq., of New York, —Hon. Jacob Collamer furnishing a brief of points and argument.

The court took time to consider till the 3d day of November; when, at the court house in Montpelier, the following opinion and decision was announced by

BARRETT, Chancellor. The bill sets forth the charter, organization and active existence of the corporation; the making of the three successive deeds, called mortgages; the issuing of the bonds secured thereby; the deeds of surrender by the corporation to the trustees under the second deed in November, 1853, and in February and June, 1854; the taking and holding of possession by said trustees under said deeds of surrender; the maturing of interest coupons on the bonds secured by the first deed; the demand and default of payment; the right and demand of possession in 1855 by the trustees under the first deed; the rise of controversy and the likelihood of serious and expensive litigation; the settling upon terms of arrangement between the trustees and bondholders under said first and second deeds respectively; the perfecting of said terms of arrangement by a proceeding and decree in the court of chancery in Rutland county in October, 1855, to which the trustees and bondholders under each of said three deeds, as well as the corporation, were made parties; which decree the orators in this bill insist is valid and binding upon the parties to it. Said terms of arrangement, and proceedings, and decree are fully set forth in, and annexed as part of, this bill; in and by which decree said trustees under said second deed were to have possession of the railroad and property; then and thereafter in their hands, till the 1st of February, 1863; at which time, if the bonds should be unpaid, secured by the first deed the trustees under said first deed were authorized and empowered to take possession of all the property held by said trustees under said second deed, "to be held and administered according to the terms and conditions contained in said first deed, and under the order and direction of that court," till the first bonds should be paid out of the net proceeds; and then to be held and administered in like manner, by the trustees under said second deed, till the bonds secured by said deed should be paid out of the net proceeds, and then to be held and administered, in like manner, by the trustees under said third deed,

till the bonds secured by said deed should be paid; and then to be surrrendered to the corporation. The bill alleges that said trustees under the second deed have ever since held possession under said decree, with the acquiescence and permission of the trustees under the first deed; that on said 1st of February; 1863, a large arrear of interest and all the principal of said first bonds remained unpaid; that no interest has been paid since February 1st, 1856; that payment has been demanded and refused; that possession has been demanded and refused, and that violent resistance is threatened against the attempt of the orators—trustees—to take possession of said road and property. The orators insist on their right to foreclose under said first deed; and to have immediate possession as mortgagees with condition broken, as well as by virtue of the express provision of the deed in that respect, and also by the force and effect of said decree. The bill prays for such foreclosure, and to have said decree enforced, and that the orators be put in possession of said road and property; and, in the mean time, for an injunction on the trustees under said second deed against their preventing the orators from taking immediate possession. The bill sets forth, in addition to the title and right of the orators, as above stated, and, in connection with the threat of forcible resistance, as constituting the occasion for the injunction moved for, certain negligences and misdoings of the trustees under the second deed—which will be more fully stated hereafter—and that the property is inadequate security for the first mortgage bonds. The bill also asks, in case the injunction should not be granted, that Cheever and Hart, the present trustees under the first deed, may be appointed receivers; and if that should not be done, that some other person be appointed receiver.

The ground on which courts of equity intervene, either by injunction or by the appointment of a receiver, in cases like the present, is, that it seems necessary in order to the preservation of the property and securities, which constitute the subject matter of the litigation, pending the controversy.

It is satisfactorily shown in this case that the orators have such a title and interest in the trust property and the avails of its use, as

would entitle them to require that it should not be subjected to waste, mismanagement, or improper diversion, pending the litigation initiated by the present bill.

This being assumed by the court, only a few of the leading points of defence to the pending motions need to be considered, viz:

1st. That as *mortgagees seeking a foreclosure*, the orators are not entitled by preliminary order, to have the possession transferred to them from the trustees under the second deed, who stand upon the rights of the mortgagor in possession.

2d. That the case does not show *such an occasion* as would justify the court in granting the injunction, or appointing a receiver under the pending motion.

3d. That, by reason of the proceedings and decree in Rutland county, the rights and interests of the parties in respect to the possession and administration of said property, can, at present, be asserted only in the court of chancery for that county.

Though the bill in its frame and matter, is as well for enforcing that decree, as for a foreclosure, and, under the general prayer for relief, might enable the court to enforce the specific provision in the first deed, as to the possession of the property named, on default of payment as provided, still it is claimed by counsel for the orators in the argument, that the ultimate relief demanded is a foreclosure under said first deed, as of a mortgage, and not for the enforcement of that decree; and they claim, as the fundamental ground for the interposition of the court by preliminary injunction, *that they have the right to the possession.*

1st. As being mortgagees with condition broken;

2d. By force of the provision in the mortgage in that behalf;

3d. By force of the terms of arrangement embodied in said decree; which third ground is invoked, as counsel claim in argument, only in aid of temporary relief sought by injunction.

It is apparent, and is conceded, that the end and effect of the injunction is designed to be the transfer of possession from the trustees under the second deed to the orators—trustees under the first deed.

I. *As to the right of possession in the first trustees as being mortga-*

*gees with condition broken:* The grantees under the second deed were invested by that deed, for the purposes therein provided, with all the right, title and interest remaining in the corporation after having executed and delivered the first deed. It is the mortgagor's right, *at law*, to hold possession till condition broken, and, *in equity*, till foreclosure and the time for redemption has expired.

It is the mortgagee's *legal* right to have possession on breach of condition; but in that case he is authorized to take it only by ejectment or writ of entry, unless he finds possession vacated, or it is surrendered to him. The doctrine of the subject is comprehensively stated in 4 Kent's Com. 159, and subsequent pages, " that the mortgage is a mere security for the debt, and only a chattel interest, and that until a decree of foreclosure, the mortgagor continues the real owner of the fee. The equity of redemption is considered to be the real and beneficial estate tantamount to the fee at law; and it is accordingly held to be descendible by inheritance, devisable by will, and alienable by deed, precisely as if it were an absolute estate of inheritance at law. The courts of law have, also, by a gradual and almost insensible progress, adopted these equitable views of the subject, which are founded in justice, and accord with the true intent and inherent nature of every such transaction." p. 161. " The mortgagor may exercise the rights of an owner while in possession, provided he does nothing to impair the security; and the court of chancery will always, on the application of the mortgagee, and with that object in view, stay the commission of waste by the process of injunction." p. 164. " The mortgagee may at any time (in this state, after condition broken) enter and take possession of the land, by ejectment or writ of entry, though he cannot make the mortgagor account for past or gone-by rents, for he possessed in his own right, and not in the character of a receiver." But it is needless to cite from books such familiar learning on this subject. When the mortgagor, or his assigns are in possession, and denying the right of the mortgagee to a foreclosure, the case has escaped my attention, if such an one has been referred to or exists, in which the court, by preliminary injunction, predicated on the mortgagee's asserted right at law, as mortgagee, to the possession, has aided the transfer of possession to him pend-

ing the litigation. Indeed the current of authority seems quite uniform to the effect, that such interposition by the court would be improper. It is conceived that the most that has been done in such cases, is the appointment of a receiver, for the purpose only of preserving the property, and its rents and profits, from waste and diversion.

*As to the specific provision in the deed for the taking of possession, on default and demand of payment :*

The object of this suit is not to enforce a covenant for possession, but to foreclose a mortgage ; not to prevent a breach of covenant, but to enforce a security. The right to enforce that security in the character claimed for it, and in the manner adopted, is denied ; and that right is the subject of the litigation instituted by the bill. The question of possession, then, is but incidental, and not involved in the question of *the right to a foreclosure* ; and still, upon the question of possession, the orator's right of possession is denied, and may be the subject of litigation under the bill. Upon a bill for a foreclosure, as the subject matter of the litigation, under a motion for a preliminary injunction that is designed to effect a transfer of the possession of the property upon which the foreclosure is to operate, the court knows of no warrant of principle or precedent for determining the effect of, and determining the ultimate rights of the parties under, a specific provision in the deed as to possession, has no bearing upon the ultimate relief sought. But, if the which object of the bill was to enforce that provision, and to obtain possession by force of it, and the injunction was asked for to effect a transfer of the possession pending the litigation, the same rule and reason would apply and be effectual against it, as in the case of a suit for the foreclosure of an ordinary mortgage. While the question of the right of possession is in litigation, I know no instance in which a court has, nor does one occur to me, in which a court would be likely, by preliminary injunction, to transfer possession from one party to the other. That would properly be done on, and by virtue of, the final decree, adjudicating the contested right. The most that the court would seem warranted in doing, would be, by injunction, to restrain the waste or diversion of the property and its proceeds,

or, if necessary for preservation, to appoint a receiver. The appointment of receivers is what was, in effect, done by Judge POLAND, in May, 1855, in the case of the *Vermont and Canada Railroad Company* v. *Vermont Central and Trustees,* upon a bill, in which the *cause and occasion* set forth for so doing are of a very different character from what this bill discloses, and supported by affidavits, which have not been brought to the attention of this court ; and the orders of injunction were only in aid of the receivership.

The remarks, thus made under the present head, apply equally to the right of the orators to the injunction sought, as predicated upon the terms of arrangement and the decree.

In conclusion, upon this aspect of the case, as touching the duty of the court to grant the injunction, it would seem sufficient to remark, that the right of the orators to such injunction does not stand on the ground of the right in them to the possession of the property, but on the ground, that they have such a right and interest in the property and proceeds, as to be entitled to have it preserved pending the litigation and determination of the conflicting claims of the parties in respect to their rights in and to said property. No question of ultimate right is properly to be determined under this motion, and of course, the ground for granting it may be entirely independent of, and aside from, the ultimate right, as established by the final decree. The legitimate object of the motion is the preservation of the property, which is the subject matter of the claim of right, to respond to the ultimate determination, if in favor of the orators.

As to the power and duty of courts of equity to restrain by injunction the breach of covenants, which was made a point, to which authorities were cited by counsel for the orators, it is proper to say, that such power is well established, and the occasions on which it becomes the duty of courts to exercise it, are well indicated in many adjudged cases; as in that cited in 10 E. L. & E. 15, and that in 16 Vt. 176 ; as where a person has assumed a relation, and is pursuing a business, in virtue of, and in reliance upon, covenants and agreements of another, and acts of such other in breach of such covenant would disturb that relation, and interfere with that business, to the irreparable injury of the party aggrieved, or such injury as

could not be adequately compensated by suit at law, the court of equity would interpose by injunction, upon a case properly made out. But such does not seem to be the present case, either in fact or by analogy.

It seems to be rather the reverse; as it seeks, by injunction, to establish and carry into effect a new relation of the orators to the property in question, and to the present holders of it, instead of seeking to prevent the present holders from disturbing them in an existing relation under said covenant as to possession.

If the orators were in fact in possession under their deed, and the defendants should undertake to oust them from, or disturb them in such possession, on some claim of adversary right, or without such claim, a case would then exist in which, upon good authority, the interposition of the court might be invoked.

Since the argument, the court has been referred to another class of cases, though standing on the same principle : *Steward* v. *Winter et al.*, 4 Sanf. Rep. 587 ; *Dodge* v. *Lambert*, 2 Bosworth Rep. 570 ; *Ellis* v. *Sanford*, 4 Sanf. Sup. Ct. Rep. 369 ; in which temporary injunctions were granted, to restrain tenants from using the leasehold property in a manner violative of their covenant in the leases, under which they respectively were holding. It is to be noticed, that, in these cases, the only ultimate relief sought was a perpetual injunction upon the tenants, predicated on said covenants. No question of title was involved, but only the effect of the covenants themselves ; and the damages for the breach were incapable of estimation, and remedy at la⬤ould lead to a multiplicity of actions. As previously remarked, in the present case the relief sought is the foreclosure of the alleged mortgage ; the title of the orators is disputed, and particularly in the character which would entitle them to a foreclosure, and is to be the subject of litigation under the bill.

Under these circumstances, of course the only legitimate purpose of an injunction would be the preservation of the security accorded by the mortgage. I repeat, that no case has been shown, and I think none exists, in which, under such circumstances an injunction, whose operation would be to transfer the possession of the property from one party to the other, has been granted on preliminary motion.

Cheever et al. *v.* R. & B. R. R Co, et al.

The court has, also, since the argument, been referred to Domat, part 1, book III, tit. 1, § 3. Art. XXIII, § 1721, where the following language occurs : " If a creditor has a mind to take possession of his pledge by virtue of an agreement which entitles him so to do, and the debtor opposes it, he cannot turn the debtor out of possession by force, but he ought to have recourse to justice, to be put into possession by authority of the judge, who will give him possession if he sees he has a right to it." This is well settled doctrine in the equity law of England and America ; but it has no bearing on the question whether it is to be done by preliminary injunction, in a case where the right to the property is the subject of litigation introduced by the bill, and the right is denied. Indeed the present suit is, in a manner, to be regarded as coming before the judge upon the claim of a pledge, and to be put in possession of the pledge, unless the debt should be paid ; and it pre-supposes that it is to be ordered when the judge shall, in due course of litigation, have adjudged the right ; not prior to, and in anticipation of, such litigation and adjudication.

To grant the injunction in the present case would be doing something more than appointing the orators receivers ; it would be putting them in possession by *prejudging* their right to it ; and this in the face of the law, that, upon such a motion the ultimate right in controversy is not to be prejudged ; that trustees should not be receivers unless under very special circumstances ; that parties to the litigation should not be receivers, unless under very special circumstances, and with the consent of the other party ; and that receivers should be appointed, not on the ground of any right in them to be such, but solely on the ground of need to preserve the property.

II. *As to the motion for a Receiver.*

The ground and occasion for the appointment of a receiver is the apparent need of it, in order to preserve the property in question, pending the litigation of the contested right to it.

In order to entitle a party to such action by the court, it is sufficient if it appears that he has a right and interest in the property to be affected by the litigation, and that it is likely to be wasted or

diverted, to the impairment, or defeat of his right as claimed, if permitted to remain in the possession and control of the other party, or other present holders.

In the present case, it satisfactorily appears that the orators have a right and interest in the property in question to a very large extent, if not in the whole of it; and so, for the purposes of the present motion, there is no need for considering the pertinency and effect of the right and lien, claimed in behalf of the second bondholders, in the answer of the present trustees under the second deed, by virtue of the alleged parol understanding and assurances, upon which the said second bonds were issued and disposed of by the corporation.

The question to be determined is, whether the case shows *an occasion*, in the apparent need for the present and prospective preservation of the property, for taking it out of the hands of its present holders, and putting it into the hands of a receiver.

As bearing on this, and as setting forth the occasion for a receiver, the bill alleges, "that the second mortgage trustees have had the custody, control and management of said railroad and property since the 7th day of November, 1853; and during that period the net income of said railroad and property as claimed by said second mortgage trustees and managers of said railroad, has been entirely insufficient to pay the interest upon said first mortgage bonds; and said second mortgage trustees have wrongfully and imprudently neglected to provide for the payment of said interest since the 1st day of February, 1856; but have wrongfully and imprudently paid out and wasted a portion of the *net* income of said property by their negligence and mismanagement, and have, by their negligence and mismanagement, increased the expenses and decreased the profits of running said railroad." The bill, in another part, avers that said property is inadequate security for the bonds under the first deed.

To this part of the bill, the answer ( as also does the bill itself ) sets forth, that the present trustees in possession were appointed to that office on the 12th day of July, 1863, by the court of chancery, in and for Chittenden county, and that they then entered upon the possession and management of the property; and it then proceeds:

"And these defendants further answering say, that since they have been appointed trustees, they have faithfully managed said property to the best of their ability, and have faithfully kept the earnings thereof, and have not paid out, nor do they intend to pay out, any of the earnings of said road and property, except for the legitimate expenses of operating said road, and keeping the same and the rolling stock and supplies in a suitable condition for business, except by the order of the court of chancery having proper jurisdiction of said property. Nor do they intend, in any way, to impair the value of any security which the orators, or any other person may have upon said property; and these defendants say that they are responsible for the faithful management of said property and the earnings thereof, and they stand ready and hereby offer to give good and sufficient security, that they will faithfully manage said property, and preserve the earnings thereof, and keep the property in good condition for business, if their fidelity or capacity is questioned by the orators, until the rights of all parties in interest shall be properly settled by the court."

This is responsive to the bill upon a vital point, on which the right of the orators to have a receiver appointed depends, and is not made upon information and belief. The *occasion* must concur with the orator's right and interest in the property, and must exist presently, in the apparent peril the property is in, and is likely to be in, under the possession and management of the persons now in possession. The character and results of past possession and management, by other persons, has no legitimate or moral tendency to show, that the present trustees will repeat their predecessors. The bill does not charge, personally, any want of capacity, fitness or honesty, upon the present trustees; but rather, on the other hand, (having reference to the short time they had been in possession, only eleven days, when this bill was filed, and to the long time their predecessors had had possession,) seems impliedly to confine the charge of wrongful and imprudent negligence and misdoings to the former trustees under said second deed. The bill and answer furnish the sole ground of action under this motion. It can hardly be claimed with plausibility, that the bill itself shows the peril of the property and its proceeds, in the

42

hands of the present trustees, in any such manner, or to any such extent, as would, under the law governing this branch of equity jurisdiction, warrant the court in putting the property into the charge of a receiver. But if it did, the answer on this subject being responsive, would, upon common principles, countervail the effect of the bill in this respect, and leave no established and sufficient ground, on which to base the action of the court in granting the motion. It is laid down in Daniels Ch. Prac. p. 1976, "Where the application for a receiver is made before answer, it must be supported by affidavits verifying the facts that are relied on by the party making it; after answer the party can only rely upon the admissions in the answer." The bill, so far as the preliminary interposition of the court was to be invoked upon it, seems to have been drawn with the controling idea in mind, that such interposition was to be predicated upon the orators' right to possession as mortgagees with condition broken, affirmed by the express provision in their deed in that behalf, and reaffirmed by the terms of arrangement and decree in Rutland county, in connection with the obvious and undisputed fact, that, under the administration of the trustees under the second deed, there had accumulated an enormous arrear of unpaid interest, to be added to the entire unpaid principal of the first bonds.

As the court is unable to act upon this view, under the motion for an injunction; and as, upon the bill and answer, the court fails to find such occasion as the law contemplates for the appointment of a receiver, it would be its duty, upon the view thus presented, to decline to grant either of the motions.

[Since drawing up my opinion in this case, the case of *Willis* v. *Corliss,* 2 Ed.'s V. Ch. Rep. 281, has come to my notice, in which the views now presented seem to be very fully sustained—cited in Edwards on Receivers, p. 531.]

III. There is still another aspect of the case, in respect to which the views at present entertained would render it the duty of the court to refrain from granting either of the motions, and, though it might seem expedient that opinion should be formed, at present, upon as few points, material to the final determination of the ultimate rights of the parties under the present bill, as would suffice for the dispo-

sition of the pending motions of the orators, yet it seems warrantable and proper to present the views of the court upon points that are fundamental to the right of the temporary aid asked by the orators, which are fully presented by the pleadings, and have been fully discussed in the elaborate arguments that have been addreseed to the court.

The bill sets forth that, in the summer of 1855, serious and expensive litigation between the trustees under the first, second, and third deeds was impending, in regard to the possession of said road and property, whereupon committees were appointed by separate meetings of the first and second mortgage bondholders, attended by a very large majority of the bondholders, to confer together, and endeavor to agree on terms of arrangement relative to the possession of said road and property ; that said committees did confer together and agree upon, and report to the meetings by whom they were respectively appointed, certain terms of arrangement in writing, which were unanimously adopted by said meetings ; and the respective trustees were requested to take measures to carry them into effect, and cause them to be embodied in a binding decree of the court of chancery for the state of Vermont, in a suit to be instituted among said parties for that purpose ; and a copy of said terms of arrangement is annexed and made part of the bill. The bill proceeds thus :

"And your orators further show, that, in pursuance of said agreement and the aforesaid request of said bondholders, a suit was instituted in the court of chancery for the county of Rutland, at the September Term thereof, 1855, in favor of said trustees of the said three mortgages, namely, Ellis Gray Loring, Thomas Thacher, Samuel Henshaw, and David A. Smalley, as orators, against said Rutland and Burlington Railroad Company and certain prominent bondholders under each of said mortgages, namely, James Cheever and William Minot, Junior, of Boston, under said first mortgage, Paris Fletcher, of Bridport, in the state of Vermont, and Benjamin T. Reed, Harrison Fay and Southworth Shaw, of said Boston, under said second mortgage, and William G. Billings and Benjamin Thaxter of said Boston, under said third mortgage, as defendants, and likewise all other bondholders under said mortgage who might,

upon notice, come in and appear in said suit; said bondholders being very numerous, widely scattered in different states, and the names of many being unknown to any of the orators in said suit.

And in and by said bill, the existence and situation of all of said mortgages were fully set forth, and the controversy that had arisen in regard to the possession of the same, and the proceedings and agreements of said different classes of bondholders in the premises, and all the facts and circumstances hereinbefore set forth by the orators, were fully and at large recited. And it was further stated, that it was not reasonably practicable to ascertain the names of all of said bondholders. And the orators in said bill prayed that the court would order due notice to be given to all parties interested in such manner as the court should direct, and so that all said bond-holders should be bound by the decree; and that the court would direct and instruct the plaintiffs relative to their respective rights and duties under said mortgages, and in the premises set forth in the bill, and would adjudicate and decree among the parties as respects the possession of said road and property, and the disposition to be made of the earnings and income thereof, and for further relief.

And such proceedings were had upon said bill, that due notice was given, according to the direction of the court, to all persons and parties interested; and the defendants appeared, and made answer to said bill. And the court, upon full hearing and consideration, made a decree in said cause between said parties, which was and is in all respects valid and binding upon all said parties, and upon all the bondholders under all of said mortgages, and still remains in full force and effect, in no wise vacated, set aside, or impaired. And your orators annex, and pray leave to refer to, as part of said bill, a copy of the substance of said answer and exhibit, and a full copy of said decree.

And your orators further show, that in and by said decree, and in full conformity to and pursuance of said agreement of the bondholders under said various mortgages, it was, among other things, and subject to certain provisions, therein ordered, that the trustees of said second mortgage should have and retain possession of said road and property (applying the earnings and income thereof as therein

directed, and for the benefit, in the first instance, of said first mortgage) from the date of said decree until the maturity of the principal of said first mortgage bonds, on the 1st of February, 1863 ; and that the possession of said road and property should then be surrendered (if said bonds remained unpaid) to the trustees of said first mortgage, and under the provisions of said mortgage.

And your orators further show, that said decree, and all the provisions and stipulations thereof, have been, on their part, fully kept and performed ; and said second mortgage trustees have retained, and been permitted to retain, the possession of said road and property from thence hitherto, without interference or restraint, and have occupied and held the same throughout under said decree, and under the protection of its proceedings, although the payments to the use of said first mortgage had been far less than were contemplated in said decree, and far less than they should have been from said property.

And the orators now insist, that, said period having elapsed, and said bonds remaining wholly unpaid, with a large arrear of interest, and the security afforded by said mortgage being entirely insufficient, they are now entitled to have said agreement of parties and said decree confirmed on their side, and to have possession of said road and property, in accordance with its provisions ; and that, if the express condition of their said mortgage is not sufficient, as they insist it is, to entitle them to such possession pending this suit, that said agreement and decree entitle them to such possession, and should be enforced to that extent by the summary order of the court in this cause."

The orator's bill, after praying for a foreclosure in proper form, proceeds thus :

"And that this honorable court will execute said decree before mentioned, and direct said railroad company, and said Smalley, Catlin and said Birchard and Stewart, trustees as aforesaid, and all agents and servants of them or either of them, to deliver possession to the said Cheever and Hart, trustees as aforesaid, of all the property, both real and personal, which the said trustees under said second mortgage may have obtained from any and all sources by virtue

of or belonging to the trust aforesaid, to be held and administered upon by your orators, trustees under said first mortgage, according to the terms and conditions of said first mortgage, and under the rules and directions of this court; and that this court award a writ of possession of such premises and property to your orators, trustees, upon and in furtherance of said decree."

That decree recites the substance of the bill, in pursuance of which it was made; the answer of the corporation, and of the defendants, bondholders under each of the three deeds; and recites the terms of arrangement entire; and, with proper recitals as to orders and notices, submission to, and consideration by, the court, proceeds to make the decretal orders, to the effect that the trustees under the second deed should have possession, control and management of the road and all the property till the 1st of February, 1863, directing in detail as to the appropriation to be made of the earnings of the road, and that the *net* earnings should be applied in payment of the coupons of the first bonds from time to time as they became due; and the surplus, if any, in payment of the coupons of the second bonds, and the surplus, if any, in payment of the coupons of the third bonds.

The decree then proceeds :

"*Fourth.* That the trustees created by and under the first aforesaid deed of trust and mortgage and their successors shall hold, subject to the terms and provisions of this deed, a lien on all the property, both real and personal, which has or may hereafter come into the possession of the trustees under said second deed, by virtue and in consequence of said trust. And at the maturity of the principal of the obligations secured by said first deed, or any previous failure to carry out the terms and provisions of this decree, the trustees under said first deed are authorized and empowered to enter upon and take possession of all the property, both real and personal, which the trustees under said second deed may have obtained from any and all sources by virtue of and belonging to the trust aforesaid, to be held and administered upon by the trustees under said first deed, according to the terms and conditions contained in said first deed, and under the order and direction of this court, unless the obligations

secured by said first deed shall be paid and satisfied. And if all such obligations shall have been fully paid and satisfied from any source, then all the aforesaid trust property, both real and personal, shall be and remain in the possession of the trustees under said second deed of trust, to be held, administered upon, and disposed of pursuant to the terms and conditions thereof, and under the order and direction of this court, unless the obligations secured by said second deed, shall be fully paid and satisfied, and if so paid and satisfied from any source whatever, then in that event the trustees under said second deed shall surrender said trusts, both real and personal, including money and demands, to the trustees under said third deed of trust. And the trustees under said last named deed shall hold, administer and dispose of said trust property according to the terms and conditions of their said deed of trust, and under the order and direction of this court, unless all the obligations secured by said third deed shall be fully paid and satisfied. And if said obligations shall all be fully paid and satisfied, then the trustees shall surrender and deliver up to the legal officers of the Rutland and Burlington Railroad Company, duly authorized to receive the same, all the property, both real and personal, including all the demands, rights, and moneys belonging to said trust property. The trustees under said second deed shall at all times have a lien upon the entire property, both real and personal, including demands and choses in action which may be in their possession, or under their control, to indemnify and save them, and each of them, harmless from any and all liabilities which they, or either of them, may in any way in good faith incur in the management of said trust, or any of the property thereof, and if necessary therefor, they are authorized and empowered to sell and dispose of enough of said property to pay and satisfy any and all such liabilities. And for the better protection of said trustees under said second deed they are authorized and empowered to retain in their possession unexpended and undistributed, twenty-five thousand dollars, so long as such liabilities may exist against them, or either of them, as a contingent fund therefor.

So long as said trustees shall control and manage the trust property hereinbefore described, they shall in the month of September in

each year make out and file in the office of the clerk of this court a full and accurate report of their acts and doings with and in relation to said trust property, the business done thereon and therewith, and of the receipts therefrom and payments made on account thereof for the year ending the 31st of August next previous, and shall immediately give public notice of such filing, by publishing a notice thereof three weeks successively in three newspapers, one published in the city of Boston and commonwealth of Massachusetts, and one in the town of Burlington and one in the town of Rutland, and state of Vermont, which publications shall be deemed to be sufficient notice to all persons and parties interested, to appear and object to and show cause why said account shall not be adjusted, allowed, and finally settled. And unless good cause be shown to the contrary, said trustees may have all their accounts in relation to said trust property finally adjusted and settled each year by this court, or some officer thereof, duly appointed therefor."

As said proceedings and decree in the court of chancery in Rutland county are made a part of the bill, by averment and by reference, and are claimed in it to be valid and binding, it is the right of the defendants to bring in question the effect of said proceedings and decree upon the right of the orators to have their pending motions granted. The orators, of course, properly stand upon their motions subject to the legal effect of the facts which they bring upon the record by their bill.

At present it seems very clear to my mind that, if that decree be valid and binding, the rights of the parties to it, in respect to the possession, use, and application of the proceeds, of the property in question, are to be determined and administered by virtue of, and conformably to the provisions of that decree, whatever those rights might have been, if the parties were standing only upon the force and effect of the respective deeds of trust, and of surrender. That decree is not, and, from its purposes and provisions, could not be final, and capable of execution by some sort of final process or procedure to enforce it; but was *administrative*, and, in a sense, interlocutory. It adjudicated the rights of the parties to it, in respect to the possession of the property, as they existed at the time it was

made, and prospectively, as depending on the happening of certain contingencies of fact—providing upon what event, the respective sets of trustees would be authorized and empowed to take possession of all the property, and providing that said property was to be administered by them respectively according to the terms and conditions of the respective deeds, and under the order and direction of that court; and, after all the purposes of the several trusts should have been accomplished, that it should be surrendered to the corporation.

As, by the terms of said decree, the rights declared by it, as belonging to the respective parties, are to be exercised *under the order and direction of said court,* it would seem to be an unquestionable proposition, that the assertion of those rights should be addressed to the court decreeing them, and under whose order and direction they are to be exercised.

This is required not only by well settled principles, and by rules of usage and practice, but is required, also, by the relation, rights and duties of the parties in reference to the property, fixed by the decree. By the very proceedings the parties have chosen their *forum* of ample jurisdiction, and have procured therein a decree adjudging their rights *in presenti*, as well as prospectively, and depending on future contingencies, and providing that the exercise of those rights, present and prospective, should be under the order and direction of that court.

Having regard to this feature of the decree, in connection with the fact that it is but interlocutory, and contemplates further and repeated action of that court upon the subject matter of it, and in pursuance of its provisions, it would seem difficult to conceive a case, where reasons more conclusive exist, for holding that the parties must resort to that court for the assertion of any rights they have under that decree, and for any remedies necessary and appropriate for the protection and enforcement of those rights.

The principles governing the exercise of concurrent jurisdiction by different courts are developed in the case of *Bellows Falls Bank* v. *Rutland and Burlington Railroad Co. et al.*, 28 Vt. 470, in the opinion delivered by Judge BENNETT, and their application is illustrated in the cases by him cited; none of which seem to stand upon

so strong reasons for the application of those principles, as does the present case.

It is claimed by counsel for the orators, as answering this view, that it is to be held, that the present suit and these motions are, in contemplation of law, in the same court as that by which said decree was made—that in fact there is but one court of chancery in the state—that each judge of the supreme court is chancellor for, and throughout, the state. It is true that the court of chancery in each of the counties, is the court of chancery of the state of Vermont; but it is at the same time true, that, when sitting and acting in a given county, it is the court of chancery of the state of Vermont, *in and for that particular* county; and as such, it is just as distinct from the court of chancery in and for any other county, as if it was a distinct and independent court created by law for that county alone, and held by a chancellor specifically elected, and exclusively designated for that particular court.

It is true that each judge of the supreme court may act as chancellor in any county in the state, but when any one does so act, it is as chancellor of the court in and for the county in which he is, for the time, acting. The jurisdiction of the court of chancery, in and for the respective counties, is as distinct and independent, as is that of the county or the supreme court.

In each county the records and the seal of the court in and for that county are provided and kept, and the causes and proceedings are all entitled as of the court, and of the respective terms of the court, in and for the county in which they are instituted; and the whole procedure, from the commencement to the final determination, is in the same court, carried on and evidenced by the files there kept, by the docket and the records; and the clerk within and for such county is alone authorized to keep the files, to make and keep the docket entries, to make and keep, and authenticate the record of such procedure.

I know of no ground, on which it could be held, that in this suit now pending upon the bill, answer, demurrers, motions and counter motions, all of which are entitled as in the court of chancery in and for the county of Windham, to the September Term of which court,

1863, the bill was made returnable, and at which term it was entered for due course of litigation, the docket minutes already made, and hereafter to be made, and the records made, or to be made, by the clerk of that county, are suppletory of the docket minutes and existing record in the suit in Rutland county, in which said decree was made in October, 1855, and to be engrafted upon, or incorporated into the docket and records made and kept by the clerk of the court of chancery in Rutland county. And with no better reason could it be claimed, that the clerk of the court of chancery in Windham county should be held to be acting as a kind of official substitute or agent, or amanuensis of the clerk of Rutland county in doing the duties of clerk in this suit and the proceedings in its prosecution.

There is one topic, which was the subject of comment by counsel for the orators, by way of protest, and, perhaps, impliedly intimated for the attention of the court by a suggestion in the brief and argument of one of the counsel for the defendants, viz: policy, either public or judicial, as affecting the action of the court ; as to which it may be proper to make a single remark. In deciding questions of right, either legal or equitable, arising upon lawful contracts entered into by the parties, there is no place for policy of any kind. Considerations of *public policy* bear only on the question of the legality of the contract, or of the remedy invoked upon it, under which rights and duties are claimed.

As to *judicial policy*, I know of none, nor of occasion for supposing that any exists, other and beyond that of determining questions of right and liability, and of affording remedies therein, according to the principles and rules of law, established by the legislature, and the legal and equitable jurisprudence of the common law.

---

The chancellor thereupon made the following order : That said motions be denied, with costs to the defendants to be taxed, and on final decree, to be adjusted in the final order as to costs.