## HUTTON v. SCHOOL CITY OF HAMMOND ET AL.

[No. 23,910.    Filed February 6, 1924.]

1. INJUNCTION.— Mandatory.— Interlocutory.— When Proper.— The general rule is that mandatory injunctions will not issue to deprive a person of property of which he is in possession under a claim of ownership until after the cause has been fully heard and it comes up for final decree, in the absence of ex- traordinary circumstances, and an interlocutory mandatory in- junction should not issue commanding the defendant to sur- render to the plaintiff certain property which had never been in possession of the plaintiff, but had been in the undisturbed possession of the defendant for years, of which he claimed to be the owner, regardless of which one held the legal title to such property.  p. 220.

2. PLEADING.—Complaint.—Sufficiency.—A complaint seeking an interlocutory order for an injunction is sufficient if it states facts justifying the relief asked and a demurrer thereto does not question its sufficiency to state any other cause of action or for any other relief.  p. 221.

From Lake Superior Court; *Walter T. Harding,* Judge.

Action by the School City of Hammond against Jo- seph T. Hutton.  From a judgment for plaintiff, the defendant appeals.  *Reversed.*

*William J. Whinery,* for appellant.

*Frederick C. Crumpacker* and *Edwin H. Friedrich,* for appellees.

EWBANK, C. J.—This is an appeal from an interlocu- tory order granting a temporary injunction of a manda- tory character, and from an order overruling a motion to dissolve such temporary injunction.  The order re- cited a finding that defendant (appellant) should deliver forthwith to one Addison C. Berry who, it stated, was an architect and a responsible and disinterested person, but who was not a party to the action in which such order was made, "all plans, drawings, specifica- tions, explanatory and exemplifying data and memo-

randa, and all other records now in his possession prepared under the contracts between the defendant and the plaintiff, in the construction and erection of an industrial high school building for the plaintiff, to be kept and held by said Berry until further order of court, * * * that the defendant should be enjoined from refusing so to do, and that he be enjoined from destroying or mutilating" the same. And it decreed "that said defendant be enjoined from refusing to deliver said data to said Berry forthwith, and that he be enjoined from destroying or mutilating the same or any part thereof, and that said documents be kept and held by said Berry, all until further order of court."

The sufficiency of the evidence to sustain this finding and order is challenged. The evidence on which the order was granted consisted of the verified complaint by the school city of Hammond, hereinafter referred to as the plaintiff, an affidavit by appellant Hutton, hereinafter referred to as the defendant, a written contract between plaintiff and defendant, and the oral testimony of four witneses, including a member of the school board of the plaintiff city, the attorney for said board, the architect (Mr. Berry) employed by the board, to whom the order appealed from directed that the plans, drawings, etc., should be delivered, and the defendant.

Under the construction tending most strongly to uphold the order, this evidence proved the following facts: That in 1910 plaintiff employed defendant to furnish all plans and specifications for the erection of an industrial high school building and that certain plans for a main building, with wings, were prepared and accepted, for which a partial payment was made; but, after some years of litigation, it was determined that the cost thereof would exceed the constitutional limit of municipal indebtedness; that in 1915 a contract in writing was entered into by plaintiff and defendant, that recited said

facts, by which defendant undertook to prepare all plans and specifications for such industrial high school building and to revise them as needed, and, upon their approval and acceptance by plaintiff, "to furnish not less than ten (10) sets of plans and specifications for the use of" plaintiff and of bidders and the contractor whose bid should be accepted; that this should be done by revising the original drawings, plans and specifications in a manner to meet the approval of plaintiff, and after such revision, the plaintiff should accept and adopt the plans already prepared under the first contract as so revised, to the end that it should not be necessary for defendant to prepare entire new plans and specifications, but only to revise and change the old ones to meet with plaintiff's approval; that defendant should release plaintiff from liability on the 1910 contract, and he should dismiss all pending suits based thereon; that the money he had received on that contract should apply in part payment of his total fee of five per centum of the lowest bid for constructing the building, which fee should include payment in full for services rendered under the original contract with one and a half per centum on all work actually constructed under his supervision; and if any part of the work left uncompleted at that time should be completed in the future, defendant should superintend the completion of the building for a fee of one and a half per centum of the added cost of completing it; that, under the latter contract, defendant revised the original plans by cutting off the two wings, and thereupon the main building for an industrial high school was erected in accordance with such revised plans, under the supervision of defendant, and he received payment therefor as agreed; that ten sets of the plans and specifications for said building were prepared by defendant and delivered to plaintiff, and some fragments of them remained in plaintiff's pos-

session at the time of the hearing, but most of them, and parts of all the others had been lost or destroyed, and plaintiff did not have so much thereof as would furnish to an architect information from which he could gain knowledge of the depths or widths of the footings and foundations, the location of the sewers, and similar facts necessary to be known in planning wings to be added to the building, which knowledge could not otherwise be obtained in less than a month, nor without an expense of about $1,500 to locate these parts and dig down and take measurements; that at the time of the hearing, defendant did not have any of the plans and specifications so prepared, nor any copies thereof, in his possession nor under his control, and had not had them at any time within five years before; but he did have data in his office from which he could reconstruct such plans and specifications, and also the details and drawings from which to complete the building by adding the two wings, which he had kept in the expectation that at some time he would be called on to complete the building under what he understood to be his contract with plaintiff; that defendant denied under oath his possession of anything whatever belonging to plaintiff, or plaintiff's ownership of anything that he had; that, before this suit was commenced, Mr. Berry visited defendant at his office and asked for the plans and specifications, but was refused; that Mr. Berry's hearing was defective, but he understood that defendant said he would be willing to give them to him, personally, but would never give them to the school board, and said that he still had a contract with the board; plaintiffs' attorney then served notice on defendant, in its behalf, to deliver up to it a foundation plan for the industrial high school building, including all extensions and additions, a sewerage plan, plans of the several floors, and of the sections, a framing plan, with construction de-

tails, a cross-section, a longitudinal section and the several elevations, with the heights thereof; that defendant answered that he had a contract to build that school, and that he would rather see all that he had in connection with the plans and data thereof burned up than to deliver them to the school board.

To uphold the ruling of the court in granting an interlocutory mandatory injunction requiring the delivery of the books and papers to Mr. Berry pending suit, plaintiff relies on a supposed rule of law giving the employer of an architect complete ownership and control of the "general design, idea and plan" of a building after the architect shall have prepared the plans and specifications, supervised the construction of the building, and received his agreed compensation. The authorities cited by counsel were all from other jurisdictions than this, and none of them went further than to hold that after said acts had been done, the architect had no such ownership or control of the plans and specifications as would give him the right to prevent his employer from afterward making use of them in having designs prepared and executed by other architects, without employing him to supervise such further building operations, or would authorize him to enjoin others from copying the plans of a building after they had been made public without being copyrighted, or would enable him to recover compensation from the employer for preparing plans and specifications, without letting the employer have a copy of them. *Wright* v. *Eisle* (1903), 83 N. Y. Supp. 887, 86 App. Div. 356; *Walsh* v. *St. Louis Exposition, etc., Assn.* (1890), 101 Mo. 534, 14 S. W. 722; *Gibbon* v. *Pease* (1905), 1 L. Rep. K. B. (1905) 810, 3 B. R. C. 460; *Hill* v. *Sheffield* (1909), 117 N. Y. Supp. 99; 5 C. J. 259.

None of these authorities touch the question whether an architect who contracted in writing to furnish ten

sets of the plans and specifications for a house, and to superintend its construction, and did so to the satisfaction of his employer, would be bound, on demand five years later, after the employer had lost those ten sets, to surrender for the use of another architect his books and papers containing the memoranda from which they were drawn. Nor have we found any authorities, either in Indiana or elsewhere, which expressly pass on that question.

It thus appears that plaintiff sought the possession of some books and papers of which it had never had possession, but which the defendant had made, and of which he had thereafter held and kept possession, of which he claimed to be the sole and absolute owner, and to which plaintiff laid claim under what it insisted was the proper construction of a contract that the parties had entered into five years before, which stipulated that defendant should furnish to plaintiff ten sets of the plans and specifications and superintend the erection of a building, and under which, said work long ago had been done to plaintiff's satisfaction.

Leaving the proper construction of the contract for determination when the case shall hereafter be decided on its merits, and merely suggesting that plaintiff's ownership and right to possession of the books and papers which it demanded were not admitted nor so clear as to be beyond possible doubt, we come to the question whether the discretionary power of the court to issue an interlocutory mandatory injunction included the right to command the surrender of these books and papers.

It has been held that when a restraining order to preserve existing conditions had been issued and served, and, in violation and defiance of such order, the defendant had built a wall, or laid a pipe line, or torn up a railroad track, or otherwise changed the condi-

tions to be preserved, an interlocutory mandatory injunction might properly issue, commanding those conditions to be restored which would have been preserved if the original order had been obeyed. *Vicksburg, etc., R. Co. v. Webster, etc., Co.* (1913), 132 La. 1051, 62 So. 140, 47 L. R. A. (N. S.) 1155; *Lovett v. Gas Co.* (1908), 65 W. Va. 739, 65 S. E. 196, 24 L. R. A. (N. S.) 230; *Daniel v. Ferguson* (1891), 2 L. Rep. Ch. Div. 27. And where an act had been done by the defendant from which a continuing nuisance resulted, that each day or each hour produced a new invasion of rights apparently vested in plaintiff, which he had long enjoyed before and until the doing of that act, such as placing a dam where it would divert the stream of a watercourse, or cutting a flume or the bank of a race by which water was conveyed to plaintiff's mine or mill, or of an irrigation ditch leading to plaintiff's fields, or shutting off the water or gas from the premises where plaintiff or his tenants lived, or closing the flue in plaintiff's chimney, or placing obstructions in a street in front of plaintiff's premises, or tearing up and destroying a public street, or erecting an obstruction across a right of way long traveled by plaintiff, or maintaining a building in such bad repair that it threatened to fall upon plaintiff's railroad track, the courts have sometimes interfered by making interlocutory orders commanding that the nuisance be abated by doing affirmative acts to restore the conditions which existed before the alleged wrong was done. *Corning v. Troy Iron & Nail Factory* (1869), 40 N. Y. 191; *Nicholson v. Getchell* (1892), 96 Cal. 394, 31 Pac. 265; *Isenberg v. East India House Estate Co.* (1863), 33 L. J. Eq. (N. S.) 392; *Johnson v. Superior Court* (1884), 65 Cal. 567, 4 Pac. 575; *London, etc., R. Co. v. Lancashire, etc., R. Co.* (1867), 4 L. Rep. Eq. Cas. 174; *Bourke v. Olcott Water Co.* (1911), 84 Vt. 121, 78 Atl. 715, Ann. Cas.

1912D 108, 33 L. R. A. (N. S.) 1015; *Brauns* v. *Glesige* (1892), 130 Ind. 167, 29 N. E. 1061; *Whiteman* v. *Fayette Fuel & Gas Co.* (1891), 139 Pa. 492, 20 Atl. 1062; *Hart* v. *Seattle* (1907), 45 Wash. 300, 88 Pac. 205, 13 Ann. Cas. 438; *Attorney General* v. *Metropolitan Board* (1863), 1 Hem. & Mil. (Eng.) 345; *Moundsville* v. *Ohio River R. Co.* (1892), 37 W. Va. 92, 16 S. E. 514, 20 L. R. A. 161; *Broome* v. *New York, etc., Tel. Co.* (1886), 42 N. J. Eq. 141, 7 Atl. 851; *Curtis Mfg. Co.* v. *Spencer Wire Co.* (1909), 203 Mass. 448, 89 N. E. 534, 133 Am. St. 307; *Longwood Valley R. Co.* v. *Baker* (1876), 27 N. J. Eq. 166; *Hodge* v. *Giese* (1887), 43 N. J. Eq. 342, 11 Atl. 484; *Pennsylvania R. Co.* v. *Kelley* (1910), 77 N. J. Eq. 129, 75 Atl. 758, 140 Am. St. 541.

And where the defendant clearly was guilty of an unlawful trespass in doing an act complained of and thereby, in violation of law, had changed a previously existing condition to the detriment of plaintiff, as by entering upon premises which plaintiff was occupying under claim of right, and driving him away by force, or going upon such premises and working at night and on Sunday to erect the walls of a building before an injunction could be obtained, or entering by virtue of the right to lay a pipe line in a right of way acquired by purchase or condemnation, and surreptitiously laying the pipes on another route, a mandatory injunction has issued immediately to compel a restoration of former conditions. *Pokegama S. P. Lumber Co.* v. *Klamath, etc., Co.* (1898), 86 Fed. 528; *Lynch* v. *Union Institution for Savings* (1893), 158 Mass. 374, 33 N. E. 603; *Shedd* v. *American Maize, etc., Co.* (1915), 60 Ind. App. 146, 108 N. E. 610; *Daniel* v. *Ferguson, supra.*

And where the defendants admitted by their verified answer that plaintiff was the owner and entitled to possession of certain books and papers that had been in the custody of their decedent but offered an excuse for

not surrendering them forthwith, an interlocutory mandatory injunction requiring that plaintiff be given access to them pending their delivery to her was issued. *Goodale* v. *Goodale* (1848), 16 Sim. (39 Eng. Ch.) 316.

But we have not been referred to any authority, nor do we know of any, holding that where the property in controversy never had been in the possession 1. of plaintiff, but defendant had held undisturbed possession of it for a period of years and claimed to be the absolute owner, he could be required by an interlocutory order to surrender it for the use of plaintiff pending suit, because of the provisions of a contract under which defendant had performed certain services years before, for which plaintiff had paid in full at the time, even if it should be found that, under a proper construction of the contract, title to such property had been conveyed by defendant to plaintiff at the time the contract was executed. The general rule is that mandatory injunctions will not issue to deprive a person of property of which he is in possession under claim of ownership, until after the cause has been fully heard, when it comes up for final decree. And in the absence of extraordinary circumstances, of a character not shown to exist in the case at bar, such an order should not issue. *Shafor* v. *Fry* (1905), 164 Ind. 315, 319, 73 N. E. 698; *Powhatan Coal & Coke Co.* v. *Ritz* (1906), 60 W. Va. 395, 56 S. E. 257, 9 L. R. A. (N. S.) 1225; *People* v. *Simonson* (1862), 10 Mich. 335; *Toledo, etc., R. Co.* v. *Detroit, etc., R. Co.* (1886), 61 Mich. 9, 27 N. W. 715; *San Antonio Water Co.* v. *Bodenhamer* (1901), 133 Cal. 248, 65 Pac. 471; *Kelly* v. *Morris* (1859), 31 Ga. 54; *Minneapolis, etc., R. Co.* v. *Chicago, etc., R. Co.* (1902), 116 Iowa 681, 88 N. W. 1082; *New Orleans, etc., R. Co.* v. *Mississippi, etc., R. Co.* (1884), 36 La. Ann. 561; *Adams* v. *Ball* (1888), (Miss.) 5 So. 109; *State, ex rel.,* v. *Graves* (1902), 66 Nebr.

17, 92 N. W. 144; *Foreman* v. *Healey* (1902), 11 N. D. 563, 93 N. W. 866; *Fredericks* v. *Huber* (1897), 180 Pa. 572, 37 Atl. 90; *Gordillo* v. *Del Rosario* (1919), 39 Philippine Rep. 829; *Hood* v. *Edens* (1919), 113 S. C. 185, 101 S. E. 822; *Catholicon Hot Springs Co.* v. *Ferguson* (1895), 7 S. D. 503, 64 N. W. 539; *Cheever* v. *Rutland, etc., R. Co.* (1863), 39 Vt. 653; *Bettman* v. *Harness* (1896), 42 W. Va. 433, 26 S. E. 271, 36 L. R. A. 566; *Lacassagne* v. *Chapuis* (1892), 144 U. S. 119, 12 Sup. Ct. 659, 36 L. Ed. 368.

Appellant's exception to the ruling on his demurrer to the complaint presents only the question whether or not any cause of action at all, for any relief whatever was stated, and would not be well taken if it should be found that the complaint stated facts sufficient to constitute a cause of action in replevin, under §1330 Burns 1914, §1266 R. S. 1881, or for any other relief. A decision of that question is not necessary in disposing of this appeal. *Risch* v. *Burch* (1911), 175 Ind. 621, 626, 95 N. E. 123.

The judgment is reversed, with directions to set aside, vacate and dissolve the temporary mandatory injunction, so far as it orders or assumes to order that defendant (appellant) shall surrender to another the possession of any of said property pending suit.