PEÑA & BALBÁS ET AL., Plaintiffs and Appellants, *v.* PEDRO VERGNE DE LA CONCHA, Defendant and Appellee.

No. 4240. Argued June 2, 1927.—Decided July 26, 1927.

A. *Marín Marien* for the appellants.   C. *Coll Cuchí, F. González Fagundo* and *G. Cruzado Silva* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

The civil partnership of Peña & Balbás brought an action against Pedro Vergne de la Concha and alleged in substance that the plaintiffs were the owners of certain real properties in Santurce producing a monthly income of approximately $2,000; that they entrusted the defendant with the management of those properties for the period of one year beginning on the 1st of August, 1926, agreeing to pay him 10 percent of the amount collected by him monthly as rents and authorizing him to deduct that commission from the said rents of which he should remit to the members of the partnership their part and render an account within five days following the day of collection; that in the same document containing the agreement for his services the defendant was given power of attorney to represent the plaintiffs before the courts in the collection of said rents and in actions of unlawful detainer; that the defendant entered upon his duties as manager on August 1, 1926, and from that time has collected the rents, but without having remitted to the partners their shares and without rendering the accounts required by the contract; that in view of the foregoing the plaintiffs gave notice to the defendant of the rescission of the contract and the cancellation of the power of attorney as from March 21, 1927, demanding that he discontinue acting as their agent and surrender the books, note-books, cash, unpaid rent bills, list of lot and house tenants and other documents pertaining to

the management; that the defendant has refused to give up the management and to deliver the things demanded of him, thereby causing damages which can not be estimated and compensated.

After filing the complaint the plaintiffs made a separate motion whereby, referring to their complaint and relying on sections 1, 2, 3 (subdivisions 1 and 2), 5 and 7 of the "Act to define injunctions" of March 8, 1906, they asked for the issuance of a preliminary injunction ordering the defendant to discontinue acting as manager and attorney in fact of the plaintiffs and furthermore ordering the said defendant to deliver the books, note-books and cash, if any, with legal interest thereon from March 21, 1926, and other documents connected with said management.

After hearing the parties the lower court refused to grant the injunction moved for.

It has been established as a general rule that an appellate court should not interfere with the discretion exercised by a lower court in the matter of a writ of injunction *pendente lite,* unless the right of the petitioner is clear or a manifest abuse of discretion is shown.

The motion for the injunction rests solely on the complaint. The action was brought to rescind a contract for the hire of services and to require the defendant to surrender the books, cash and documents specified in the complaint. The injunction prayed for tends not only to prohibit the defendant from further acting as manager and attorney in fact of the plaintiffs, but has also for its object to compel the defendant to deliver the books, cash and documents mentioned. Under this last aspect the injunction would have a mandatory character. The plaintiffs deny, however, this nature of the injunction.

In the case of *Clute* v. *Superior Court,* 155 Cal. 19, the plaintiff corporation petitioned for an injunction against Clute restraining him from further acting as manager of a

hotel belonging to the corporation and requiring him to surrender certain books, records, etc., to the plaintiff. It was held by the court that the injunction would be mandatory.

Although the appellants acknowledge the absolute analogy between the present case and the *Clute Case*, they insist, however, that the injunction in this case is not mandatory. The inconsistent attitude of the appellants may be explained perhaps by the fact that in the *Clute Case, supra,* the point in issue referred only to the effects of the appeal from a restraining order which was violated by the defendant who was punished for contempt, and by the conclusion reached by the court about the character of the injunction. A certiorari was presented and the court found that the most appropriate remedy was a writ of supersedeas. The court then said: "Upon the question whether that injunction was mandatory or purely prohibitory the present application depends. . . . For the purpose of determining the effect of this injunction as mandatory or prohibitory, we must consider the result of an enforcement of the writ on the position of the defendant, as asserted in the court below. If the injunction compels him affirmatively to surrender a position which he holds, and which, upon the facts alleged by him, he is entitled to hold, it is mandatory."

The case of *Hutton v. School City of Hammond*, 194 Ind. 212, is another example of a mandatory injunction which ordered the defendant, an architect, to deliver the plans and specifications of a certain work. The appellants cite this case in order to distinguish it from the present case, because the plans and specifications belonged to the defendant. The appellants, however, overlook the fact that in the case cited the general rule is established that a mandatory injunction should not issue until after the cause has been heard on its merits and final decree entered. That doctrine is in harmony with the general theory that a mandatory injunction *pendente lite* should issue only in exceptional cases and that it is rarely

granted before final hearing or before the parties have had an opportunity to present all of the facts in such manner as to enable the court to see and judge what the truth may be. 14 R.C.L. 317. Therefore it is possible that there may be cases in which mandatory injunctions may issue preliminarily, but under the facts of the present case which rests solely on the complaint and whose allegations are insufficient, the remedy prayed for does not lie. In this connection the trial court expresses itself as follows in its ruling:

"No facts are alleged sufficient to show irreparable injury, nor is there any allegation that the defendant is insolvent or unable to answer in damages; on the contrary, it appears from the contract for the hire of services and the power of attorney attached to the complaint and made a part thereof that the defendant had furnished bond through a surety company in the sum of $2,500 for the performance of his duties and to cover his liability from the time he took up his duties until the final approval of his accounts."

The appellants urge that the allegation of irreparable injury is implied from the allegations of the complaint and that it is not necessary to make a special allegation thereof. Their contention is that the books and other documents claimed have no monetary value, but an intrinsic one. However, an allegation of that kind would seem to have been the proper thing. A mere allegation of "irreparable injury" in a petition for an injunction is not sufficient. The facts should have been alleged as required by the jurisprudence. Moreover, both in the complaint and in the motion for an injunction the prayers included not only the surrender of books and other documents, but the delivery of the cash in the possession of the defendant, and it has been held unanimously that an injunction is not the proper remedy to compel the payment of money.

For the foregoing reasons the judgment appealed from should be affirmed.