LELAND REES AND FANNIE S. REES *v.*
PANHANDLE EASTERN PIPE LINE COMPANY

[No. 2-376A92. Filed June 12, 1978.]

*Raymond M. Adler, Webb & Webb*, of Noblesville, for appellants.

*Thomas A. Withrow, Charles R. Disque, Henderson, Daily & Foxworthy*, of Indianapolis, *Gerald R. Jenkins, Pro Hac Vice*, of Kansas City, Missouri, for appellee.

SULLIVAN, J. — Panhandle Eastern Pipeline Company (Panhandle) filed suit against Leland and Fannie S. Rees (hereinafter referred to as Rees) seeking injunctive relief. After a hearing, the trial court entered an interlocutory order granting a preliminary injunction from which Rees appeals.

Panhandle possesses right-of-way easements for the operation and maintenance of four (4) underground natural gas pipelines across 15.10 acres of wooded tract owned by Rees. These lines are referred to as the G-100, G-200, G-300 and G-400 lines. The G-400 line was created in a prior condemnation action which expressly provided for a width of 66 feet. The other three lines were constructed pursuant to easement grants which did not contemplate specific widths,[1] but which reserved the right of the dominant owner to operate, maintain and repair the lines.

---

1. In previous litigation, Rees filed a complaint alleging in one count that Panhandle had wrongfully cleared a 50 foot strip over the G-200 line. The trial court sustained Panhandle's Motion for a Directed Verdict on that count. However, Panhandle's contention that the width of this line has been adjudicated and therefore not in dispute here is without merit. The interlocutory order in the present action provides for a width of up to 66 feet. Thus, the actual width of the G-200 line is still in contention as hereinafter discussed in Part II D.

On June 5, 1975, Panhandle employees were attempting to clear brush and trees from one of the easement right-of-ways when they were approached by Leland Rees. Rees, protesting Panhandle's attempt to extend the width of the easement in excess of the 15 to 25 feet cleared in years past, ordered the employees off the land and threatened violence if they returned. After several unsuccessful attempts to negotiate a settlement with Rees, Panhandle filed this action seeking to enjoin further interference with its clearing activity. The trial court, upon hearing evidence, granted preliminary relief as per the following order:

## "ORDER ON PRELIMINARY INJUNCTION

"Plaintiff, Panhandle Eastern Pipe Line Company having filed its Amended Complaint seeking in Counts II and III thereof a preliminary injunction, said Amended Complaint being in the words and figures as follows:

"(H.I.)

"And a hearing on Plaintiff's application for a preliminary injunction having been held on the 4th day of February, 1976, the Court, being duly advised in the premises, finds that:

"1.   Pursuant to duly acquired right-of-way easements, Plaintiff operates four (4) pipelines for the high pressure transmission of natural gas over and across a tract of real estate owned by Defendants, Leland and Fannie S. Rees, in Hamilton County, Indiana, (hereinafter referred to as the 15.10 acre tract) more particularly described as follows, to wit:

[description omitted]

"2.   Pursuant to said easements, Plaintiff has the right to operate, maintain and repair its pipelines which traverse the 15.10 acre tract.

"3.   In order for Plaintiff to operate, maintain and repair its pipelines, it is necessary that Plaintiff periodically clear trees and brush from the surface area above its pipelines over an area up to 33 feet in width on each side of, and along the entire length of, each of said pipelines, except the G-400 line, for which a specific area is expressly defined by the easement condemned for said pipeline;

"4.   In order for Plaintiff to operate, maintain and repair its G-400 line, it is necessary that Plaintiff periodically clear trees and

brush from the surface area above its G-400 line over the area expressly defined by the easement condemned for said line;

"5. In order for Plaintiff to operate, maintain and repair its pipelines, it is necessary that Plaintiff have access to and ingress and egress to and from its pipelines for the purpose of making periodic ground and aerial inspections of its pipelines, and for the purpose of making any needed pipeline repairs or maintenance;

"6. There is an immediate and impending danger that Plaintiff and the public will suffer irreparable harm if Plaintiff is not allowed to clear trees and brush from the surface area over its pipelines across the 15.10 acre tract, in that Plaintiff cannot otherwise properly inspect its pipelines to discover and guard against, or repair, leaks, encroachments and other dangers which might cause pipeline ruptures and explosions, and thereby result in injury and damage to lives and property and in loss of gas supplies to Plaintiff's customers;

"7. The clearing of trees and brush from the surface area over Plaintiff's pipelines across the 15.10 acre tract will not result in undue loss or inconvenience to Defendants;

"8. The Plaintiffs has filed with the Court a bond in the amount of $15,000, as set by the Court to pay costs and damages suffered by Defendants if they be found wrongfully enjoined; and

"9. The Defendants should be enjoined from interfering in any way with Plaintiff's exercise of its right (a) to clear trees and brush from the surface area above its G-100, G-200 and G-300 lines over an area up to 33 feet in width on each side of, and along the entire length of, said lines on the 15.10 acre tract, and (b) to clear trees and brush from the surface area over its G-400 line over the area expressly defined by the easement condemned for said line, and from otherwise interfering in any way with Plaintiff's access to, and right of ingress and egress to and from, its pipelines on the 15.10 acre tract for the purpose of making periodic ground and aerial inspections of its pipelines and for the purpose of doing any needed pipeline repairs or maintenance.

"IT IS, THEREFORE, ORDERED that the Defendants, Leland and Fannie S. Rees, and their agents, employees, servants and all persons in active concert and participation with them or claiming under them, pending the trial and determination of this action, are hereby restrained and enjoined from interfering in any way with Plaintiff's exercise of its right (a) to clear trees and brush from the

surface area above its G-100, G-200 and G-300 lines over an area up to 33 feet in width on each side of, and along the entire length of, said lines on the 15.10 acre tract; and (b) to clear trees and bush from the surface area over its G-400 line over the area expressly defined by the easement and condemned for said line, and from otherwise interfering in any way with Plaintiff's access to, and right of ingress and egress to and from, its pipelines on the 15.10 acre tract for the purpose of making periodic ground and aerial inspections of its pipelines and for the purpose of doing any needed pipeline repairs or maintenance.

"Dated:   February 5, 1976.

"Signed:   V. Sue Shields
"Judge, Superior Court of
"Hamilton County"

I.

*PROCEDURAL ISSUES PRESENTED BY APPELLANT*

Rees raises several procedural issues. He first contends that due process of law as denied when (1) testimony by means of affidavit was permitted to be introduced and (2) adequate time was not allowed for examination of the affidavits.

The propriety of allowing testimony to be introduced by affidavit upon application for a temporary, i.e. preliminary,[2] injunction is evidenced by the following statutes:

I.C. 34-1-10-3 (Burns Code Ed. 1973) provides:

"*Application to be verified.*— In all applications for an injunction, the complaint, or so much thereof, as pertains to the acts or proceedings to be enjoined, shall be verified by affidavit. The injunction may be granted at the time of commencing the action, or at any time afterwards before judgment in that proceeding."

I.C. 34-1-10-4 (Burns Code Ed. 1973) provides:

---

2.   It may be noted that the various statutory provisions (IC 34-1-10-1 *et seq.*, Burns Code Ed. 1973) and the controlling procedural Rule, (Ind. Rules of Procedure, Trial Rule 65) with respect to preliminary injunctions, as opposed to restraining orders without notice or as opposed to permanent injunctions, interchangeably use the words "temporary" and "preliminary". *See State ex rel. American Reclamation & Refining Co. v. Klatte* (1971), 256 Ind. 566, 270 N.E.2d 872; *Jacob Weinberg News Agency, Inc. v. City of Marion* (1975), 163 Ind.App. 181, 322 N.E.2d 730.

"Affidavits may be read. — On the hearing of an application for a restraining order or temporary injunction, each party may read affidavits, or documentary or record evidence."

Affidavits will support the issuance of a temporary injunction notwithstanding the fact that no oral evidence was presented. *Everett v. Ward* (1971), 256 Ind. 94, 267 N.E.2d 174. Furthermore, a temporary injunction may be granted upon the affidavit of the plaintiff alone. *Tuf-Tread Corp. v. Kilborn* (1930), 202 Ind. 154, 172 N.E. 353; *Hardy v. Donellan* (1870), 33 Ind. 501.

Rees' contention that he was denied adequate time to examine the affidavits introduced by Panhandle at the hearing has not been preserved for review on appeal. The only specific objection to their introduction was based on the fact that they were "made in Marion County" which, according to Rees, indicated that the witnesses were readily available. No continuance was requested. Furthermore, Rees has cited no authority for his contention, nor has he shown how he was prejudiced by the alleged inadequacy of time.

Rees next contends that his wife, Fannie S. Rees, was improperly named in the order since there was no evidence that she had either interfered or threatened to interfere with Panhandle's easement rights. Generally, defendants who have a common interest and a common defense are properly joined in one suit for injunctive relief. *See* 43A C.J.S. *Injunctions* § 184, p. 367. Mrs. Rees, a tenant by the entirety of the land in dispute, is an indispensible party and therefore bound by any substantive determination concerning the land. *See Eilts v. Moore* (1946), 117 Ind.App. 27, 68 N.E.2d 795. We are cognizant of the fact, however, that all parties to the substantive action are not, because of such status, necessarily subject to temporary injunctive relief granted to preserve the court's ability to render a final determination on the merits. It might well be that Mrs. Rees falls in this latter category. But Rees has failed to show how inclusion of his wife has resulted in any prejudice. Accordingly, we need not reverse upon this ground.

Contrary to Rees' final procedural contention, the order was sufficiently specific to instruct the parties as to the persons enjoined, the

purpose of the injunction, and the dimensions and location of the area in question.

## II.

### STANDARD FOR ISSUANCE OF A PRELIMINARY INJUNCTION

The grant or denial of a preliminary injunction rests in the sound discretion of the trial court and will not be disturbed except for abuse of that discretion. *Peters v. Davidson, Inc.* (1977), 172 Ind.App. 39, 359 N.E.2d 556; *Elder v. City of Jeffersonville* (1975), 164 Ind.App. 422, 329 N.E.2d 654. "Abuse of discretion" has been defined as:

"... an erroneous conclusion and judgment, one clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *McFarlan v. Fowler Bank City Trust Co.* (1938), 214 Ind. 10, 14, 12 N.E.2d 752, 754.

An applicant for preliminary relief is not required to plead and prove a case which would entitle him to relief upon determination of the merits. The appropriate burden of proof has been described as follows:

"In our determination of whether or not the trial court committed any error in granting the temporary injunction in this case, the appellee (the plaintiff below) need only show a prima facie case for an injunction and that injury to him would be certain and irreparable if the application be denied. . . . It is not necessary that a case should be made that would entitle the plaintiff to relief in all events. It is necessary only that the pleadings and evidence be such that it makes out a case for proper investigation in equity and that the status quo be maintained pending such trial on the merits." *The Indiana Annual Conference Corporation v. Lemon* (1956), 235 Ind. 163, 167, 131 N.E.2d 780, 782.

In reviewing the grant of the preliminary injunction, we will not reweigh conflicting evidence, but will consider only that evidence which tends to support the trial court's findings of fact, conclusions of law and order. *Peters v. Davidson, supra*, 359 N.E.2d 556.

### A. *Status Quo*

The general purpose of a preliminary injunction is the maintenance

and preservation of the status quo until the case can ultimately be heard on the merits. *City of Fort Wayne v. State ex rel. Hoagland* (1976), 168 Ind.App. 262, 342 N.E.2d 865. The status quo has been defined as the "last actual, peaceable, non-contested status proceding the pending controversy." *Professional Beauty Products, Inc. v. Schmid* (Tex. Civil App. 1973), 497 S.W.2d 597, 599.

The case at bar affirms that "[i]t is often difficult to determine what date is appropriate for fixing the status quo." 11 Wright and Miller, Federal Practice and Procedure § 2948, p. 465 (1973). Panhandle was in the process of cutting and clearing brush from the disputed area when Rees intervened. The trial court, by enjoining Rees from further interference, allowed Panhandle to continue and complete the clearing, therefore apparently adjudging the status quo to be the active conduct of Panhandle at the moment Rees complained of it.

While this interpretation has a simple attractiveness, we cannot accept its logical result. We are of the belief that the last actual, peaceable, *non-contested* status of both parties was before Panhandle initiated its clearing activity. The term "non-contested" is determinative here, and it should be applied to the totality of the questioned activity. To hold otherwise would be to render the propriety of granting a temporary injunction dependent upon whether the disputed or wrongful conduct is discovered in the contemplative or preparatory stage. Such would result in circumvention of one of the purposes of preliminary injunctive relief — the preservation of the subject-matter of the litigation.

In *Cornett v. Reynolds* (Tex. Civil App. 1956), 289 S.W.2d 660, defendant entered upon the land of plaintiff under claim of a lease. The plaintiff subsequently discovered the alleged encroachment. The court defined the status quo in this instance as the "peaceable, non-contested status of appellees *before the appellant [defendant] sought to interfere.*" 289 S.W.2d at 662. (emphasis supplied).

In *Washington Capitols Basketball Club, Inc. v. Barry* (9th Cir. 1969) 419 F.2d 472, a professional athlete under contract to one team signed a second contract to play for another. When the former team sought to enjoin performance on the second contract, the validity of which was in dispute, the court deemed the status quo to have been prior to the second contract.

Finally, in *Mounce v. Bostick* (Tex. Civ. App. 1976), 531 S.W.2d 887, the trial court dealt with circumstances similar to those in the case at bar. Defendants proceeded to cut trees on a strip of land allegedly held by them in easement. Plaintiff-landowners sought an injunction preventing further cutting, and defendant sought a counter-injunction against interference with the cutting.[3] The trial court enjoined the defendants from further cutting, and in so doing defined the status quo as follows:

"It clearly appears that the last actual, peaceable, noncontested status preceding this controversy was that which existed before Mounce and Williams began their 'one-saw' test of the validity of the assignment of the easement to Mounce. Mounce and Williams, by their unilateral act of entering upon the land lying between the roadway and Mounce's east line changed the peaceable status which had existed for several years." 531 S.W.2d at 889.

Furthermore, as stated in *Steggles v. National Discount Corp.* (1949), 326 Mich. 44, 39 N.W.2d 237, 240:

"[T]he status quo which will be preserved by preliminary injunction is the last actual, peaceable, non-contested status proceeding the pending controversy, and equity will not permit a wrongdoer to shelter himself behind a suddenly or secretly changed status, though he succeeded in making the change before the chancellor's hand actually reached him."

The status quo in this instance was not preserved. As will be seen, however, such failure is not fatal to the maintenance of the injunction if other requirements are met and if there are compelling grounds for its issuance. *See Ross-Whitney Corp. v. Smith Kline and French Laboratories* (9th Cir. 1953), 207 F.2d 190. As was stated in *Pankas v. Bell* (1964), 413 Pa. 494, 198 A.2d 312, 313: "In reviewing the grant or denial of a preliminary injunction our familiar rule is to examine the record only to determine 'if there were any *apparently reasonable grounds* for the action of the court below, . . .' "

---

3. In *Mounce v. Bostick, supra,* both parties sought preliminary injunctions. We see no valid distinction where, as here, only one party seeks preliminary relief. It seems axiomatic that there is only one status quo at any point in time. The trial court's duty to preserve remains unchanged whether one or both parties seek preliminary relief pending determination of the merits.

## B. *Inadequate Remedy at Law*

The equitable relief of injunction will not issue where there is an adequate remedy at law. *State ex rel. Indiana Alcoholic Beverage Commission v. Superior Court of Vanderburgh County et al.* (1951), 229 Ind. 483, 99 N.E.2d 247. The rule was elucidated in *Xenia Real Estate Co. v. Macy* (1896), 147 Ind. 568, 573, 47 N.E. 147, 148, wherein the court quoted from *Denny v. Denny* (1887), 113 Ind. 22, as follows:

" 'It is not enough that she had a remedy at law; it must be plain and adequate, or in other words, as practical and efficient to the ends of justice, and its prompt administration, as the remedy of equity.' "

Rees contends that Panhandle has legal alternatives to the preliminary injunction in the forms of declaratory judgment, condemnation and quiet title. All three, however, merely provide possible methods to determine the merits of the basic dispute. None would have the necessary effect of preserving the subject-matter of the litigation and preventing irreparable harm pending the substantive action.

Furthermore, it has been held that the trial court has discretion to grant a temporary injunction even when there is a theoretical remedy at law. *McKain v. Rigsby* (1968), 250 Ind. 438, 237 N.E.2d 99.

### C. *Comparative Injuries: Balance of Hardships*

#### 1. *Irreparable Harm to Plaintiff*

One element of the prima facie case for temporary injunctive relief is the requirement that plaintiff show injury to be "certain and irreparable" if the application be denied. *The Indiana Annual Conference Corporation v. Lemon, supra*, 131 N.E.2d 780, 782.

Evidence was introduced at the hearing indicating the following. Panhandle must make weekly inspections of over 12,000 miles of pipeline for leaks, soil erosion and encroachments which could cause a rupture or explosion. Such inspection is required by the *Federal Natural Gas Pipeline Safety Act*, 49 U.S.C. §§ 1671-1684 inclusive. An explosion not only could casue serious injury in the general vicinity of the leak, but

it could also result in the loss of substantial quantities of valuable natural gas from the high-pressure lines.

Panhandle further submitted evidence that aerial inspection is the only feasible means to patrol the lines. In order to facilitate such inspection, brush and trees must be cleared over the pipeline to a width of 66 feet, 33 feet on each side. Such a width is also necessary for the ingress and egress of repair vehicles.

Rees offered no evidence to rebut Panhandle's contention that the designated width was necessary or that the danger of leaks was imminent, certain and irreparable. On the contrary, Rees testified that he had personal knowledge of one such leak which had caused damge to an oat field near his residence. Panhandle's inspection pilot testified that he had personally observed at least ten leaks in the general vicinity of Rees' residence.

Such evidence sufficiently supports a conclusion that irreparable and virtually certain injury would result upon denial of the application for the injunction.

### 2. *Harm to Defendent*

A necessary factor in the trial court's exercise of its discretion involves an evaluation of the severity of the impact on the defendant. *United States v. School Dist. of Omaha, State of Nebraska* (D.C. Neb. 1973), 367 F. Supp. 179; 11 Wright and Miller, *supra*, § 2948, p. 442. Here, the intangible value of the trees and scenery which would be destroyed required consideration in the balancing of the relative injuries.

### 3. *Harm to the Public*

The public interest is also an important consideration in the balancing formula. *The Windfall Manufacturing Co. v. Patterson et al.* (1897), 148 Ind. 414, 47 N.E. 2; *Elder v. City of Jeffersonville, supra*, 329 N.E.2d 654; *West Virginia Highlands Conservancy v. Island Creek Coal Co.* (4th Cir. 1971), 441 F.2d 232; *Indiana State Employees Association, Inc. v. Negley* (S.D. Ind. 1073), 357 F. Supp. 38.

As stated by Mr. Justice Black in *Inland Steel Co. v. United States* (1939), 306 U.S. 153, 157, 59 S.Ct. 415, 417-418:

"[I]t is the duty of a court of equity granting injunctive relief to do so upon conditions that will protect all-including the public-whose interest the injunction may affect."

Other authorities have also emphasized this consideration:

"When an injunction is sought and the grant would aid the public interest and latter factor is highly relevant." 7 Moore's Federal Practice ¶ 65.04[1], p. 65-45 (1975).

"Courts of equity may, and frequently do, go much farther both to give and withdraw relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." *Virginia Ry. Co. v. System Federation [No. 40]* (1937), 300 U.S. 515, 552, 57 S.Ct. 592, 601.

The evidence adduced by Panhandle as previously set forth sufficiently establishes the gravity of the possible consequences for the public welfare. The trial court was well-advised to give considerable weight to this factor.

### 4. *The Balancing Test*

The trial court, under the peculiar circumstances of this case, was required not only to balance the relative hardships between the parties, *see Weis v. Cox* (1933), 205 Ind. 43, 185 N.E. 631, but was also required to weigh the necessity of modifying the status quo in order to prevent irreparable injury to Panhandle and the public.

We determine that the trial court did not abuse its discretion in these respects. First, it has been stated that "when the acts sought to be enjoined have been declared unlawful or clearly are against the pulbic interest, plaintiff need show neither irreparable injury nor a balance of hardship in his favor." 11 Wright and Miller, *supra,* § 2948, p. 461. Furthermore, "an interlocutory order should be granted where the injury which the defendant would suffer from its issuance is slight *as compared with* the damage which plaintiff would sustain from its refusal . . ." 42 Am.Jur.2d, Injunctions, §57, pp. 800-801 (1969) (emphasis supplied).

We recognize the trial court's dilemma in attempting to reconcile apparently conflicting requirements for a preliminary injunction. In order to allow clearance of the easement and inspection for leaks, and thus prevent the serious and irreparable harm which both Panhandle and the public would suffer, it was required that the status quo be altered.

Numerous authorities have condoned the manipulation of the status quo by injunction where justice so mandates. The court in *Flood v. Kuhn* (S.D.N.Y. 1970) 309 F.Supp. 793, 799, stated:

"[W]ithout regard to preserving the status quo preliminary relief may be ordered if there is a significant showing of potential irreparable harm to the plaintiff. Such instances are rare, however, and the burden on plaintiff is very demanding."

The court in *Unicon Management Corp. v. Koppers Co.* (2nd Cir. 1866) 366 F.2d 199, 204, stated:

"It is hornbook law that 'the general purpose of a preliminary injunction is to preserve the status quo pending final determination of the action.' 7 Moore, Federal Practice ¶ 65.04[1] (2d ed. 1955). Obviously, where agreements which require joint action lead to disputes between the parties which cannot be dissolved short of litigation, it is impossible to place the parties in the exact positions which they enjoyed prior to their disagreement. It follows that the court must have discretion to fashion such a preliminary injunction as may best approximate past positions in the light of the basic rights of the parties.

"Other courts have granted preliminary relief without regard to establishing the status quo, as long as there was a showing of potential irreparable harm, e.g., *Ross-Whitney Corp. v. Smith, Kline & French Lab.*, 207 F.2d 190, 199 (9 Cir. 1953), and at other times, as long as the injunction creates a common sense modus vivendi to keep peace between the contracting parties, and avoids unnecessary economic waste until the case is adjudicated."

Other authorities are to the same effect:

"Unfortunately, there has been great judicial hesitancy in granting preliminary relief when it is necessary to force defendant to act solely to protect the court's power to render a meaningful decision for either party and the decision would disturb the status quo. When there are other adequate grounds for denying the injunction, this formula appears to be a harmless make-weight, but it is regrettable if it leads to the denial of an injunction when the important conditions for its issuance have been satisfied. The doctrine has been subject to academic criticism and frequently is ignored or rejected by the courts." 11 Wright and Miller, *supra*, § 2948, p. 466.

"The concept *status quo* lacks sufficient stability to provide a

satisfactory foundation for judicial reasoning. The better course is to consider directly how best to preserve or create a state of affairs in which effective relief can be awarded to either party at the conclusion of the trial." Developments in the Law — Injunctions, 1965, 78 Harv.L. Rev. 994, 1058.

"[T]he maintenance of the *status quo* is only one of the reasons for which a preliminary injunction may be granted. It may also be granted to prevent irreparable harm." *Ross-Whitney Corp. v. Smith Kline and French Laboratories, supra,* 207 F.2d at 199.

*See also United States v. Barrows* (9th Cir. 1968) 404 F.2d 749.

Under the particular circumstances of this case, we believe the trial court did not abuse its discretion in allowing a change in the status quo to prevent serious irreparable injury.

D.  *Special Limitations on Issuance of Preliminary Injunctions*

The propriety of issuing a preliminary injunction as framed by the foregoing general requirements is further restricted in certain situations.

A preliminary injunction is generally improper where its issuance would effectively adjudicate the merits and give plaintiff all or most of the relief to which he would be entitled if successful at trial. *Weis v. Cox, supra,* 185 N.E. 631. *See also* 11 Wright and Miller, *supra,* § 2948, p. 445. Rees contends that the injunctive relief granted in the instant case established Panhandle's easement rights before the hearing on the merits.[4] We disagree.

There is authority to the effect that a preliminary injunction may issue, even if it would substantially determine the merits, upon a sufficient showing of need. *See United States v. Atlantic Richfield Co.* (D.C. N.Y. 1969) 297 F.Supp. 1061; *Injunctions,* 78 Harv. L. Rev. 994, 1058; 11 Wright and Miller, *supra,* § 2948, p. 447.

---

4.  This is not a situation in which it appears of record that, without objection by either party, the case was tried on the premise that the substantive rights were to be determined at the preliminary hearing, *see Lafayette Car Wash, Inc. v. Boes* (1972), 258 Ind. 498, 282 N.E.2d 837, nor was the hearing on the preliminary injunction formally consolidated with the trial on the merits pursuant to Ind. Rules of Civil Procedure, Trial Rule 65(a)(2), *see Peters v. Davidson, Inc., supra,* 359 N.E.2d 556, nor did the entire controversy center upon the mere interpretation of a statute so as to permit a substantive determination on appeal. *See Sweigart v. State* (1938), 213 Ind. 157, 12 N.E.2d 134.

The pertinent language in the trial court's order, while subject to the interpretation that it has established easement rights, is properly limited to the finding that the designated width is necessary for the prevention of irreparable harm until the determination of rights can be made.[5] Admittedly, the order does allow destruction of part of the subject-matter of the litigation — the trees and scenic beauty of the area. Nevertheless, the injunction has not finally adjudicated the merits. The necessity of periodic clearing will recur in the future. In this respect, the substantive issues of the case have not been disposed of.

It has also been stated that injunctions will not issue to deprive a person of property in his undisturbed possession under absolute claim of ownership until after the adjudication of the merits. *Hutton v. School City of Hammond* (1923), 194 Ind. 212, 142 N.E. 427.

We initially note that the above proposition is not a hard-and-fast rule, *see* 42 Am.Jur.2d Injunctions § 15, p. 745, and it has been held that a court may interfere by way of interlocutory injunction for the prevention of irreparable mischief although a change of actual possession may result. *See Dingley v. Buckner* (1909), 11 Cal.App. 181, 104 P. 478; *San Antonio Water Co. v. Bodenhamer and Sierra Water and Power Co.* (1901), 133 Cal. 248, 65 P. 471; 15 A.L.R.2d 213, § 23, p. 274.

Furthermore, the *Hutton* decision is distinguishable from the case at bar on several grounds. *Hutton* dealt with the issuance of a mandatory injunction The injunction in question here is prohibitory in form.[6] That the *Hutton* court contemplated instances where the rule would not apply is evidenced by the following:

> "The general rule is that mandatory injunctions will not issue to deprive a person of property of which he is in possession under

---

5. In this connection, we are doubtful whether the trial court could, even if it so desired, specifically limit the G-100, G-200 and G-300 lines to a definite width. Easements of unspecified width which preserve the right to maintain, operate and repair such as it reasonably necessary cannot be limited in width. *See Flynn v. Michigan-Wisconsin Pipeline Company* (Iowa 1968), 161 N.W.2d 56. Since the right of ingress and egress and the right to maintain and repair a pipeline has been held to imply a right to patrol the line in the most expeditious manner possible, *see* 61 Am.Jur.2d Pipelines § 30, p. 411, such width as is necessary to carry forth this right is susceptible to change in the future.

6. For the distinction and its relevance, *see Sorrentino v. Cunningham* (1942), 111 Ind.App. 212, 39 N.E.2d 473; 42 Am.Jur.2d Injunctions, § 21, p. 753.

claim of ownership, until after the cause has been fully heard, when it comes up for final decree. *And in the absence of extraordinary circumstances, of a character not shown to exist in the case at bar, such an order should not issue.*" 194 Ind. at 220 (emphasis supplied).

The exigencies of the present case, in our opinion, provide such circumstances. Furthermore, the court in *Heugal v. Townsley* (1938), 213 Ind. 339, 12 N.E.2d 761, repeated the rule, but couched it in more revealing language when it stated:

> "[An] injunction may not be resorted to against one in possession under claim of right [*Paetz v. Mix* (1923), 80 Ind.App. 449, 141 N.E. 248; *Lacassagne v. Chapuis* (1892), 144 U.S. 119, 12 S.Ct. 659, 36 L.Ed. 368; *Blinn et al. v. Hutterische Soc. of Wolf Creek et al.* (1920), 58 Mont. 542, 194 P. 140], *unless the one in possession is doing or threatening mischief, going to the injury or destruction of the estate. Spear v. Cutter* (1849), 5 Barb. (N.Y.) 486; *Erhardt v. Boaro, et al.* (1885), 113 U.S. 537, 5 S.Ct. 565, 28 L.Ed. 1116." 12 N.E.2d at 762. (emphasis supplied).

The court also quoted language from *Wabash Railroad Company v. Engleman* (1903), 160 Ind. 329, 333, 66 N.E. 892, 893, which suggests that the above rule does not apply to temporary injunctions:

> " 'If the title to the locus in quo is in doubt, the injunction, if allowed at all, *should only be temporary*, until the title can be determined at law.' The reason for this doctrine is because as a general rule, a court of equity will not try disputed titles to land. * * * But exceptions, however, have been made to this general rule, and there is authority for asserting that when the aggrieved party *is in possession* of the premises, although his title thereto is in dispute and has not been established by law, if, under the particular circumstances, irreparable injury will result from the threatened wrong or trespass, an injunction will be awarded." (Italics ours.) (first emphasis supplied).

*See* 60 A.L.R.2d 310, 348, for a view accepting such interpretation.

Finally, none of the cases cited by Rees in support of his contention dealt with rights in easements. The rule as set forth in *Hutton* cannot be extended to disputes over easement rights since neither the servient nor dominant owners is in "absolute" possession under exclusive claim of ownership. An easement agreement contemplates that parties will share correlative rights with respect to

the same land. The court in *Flynn v. Michigan-Wisconsin Pipeline Company, supra,* 161 N.W.2d 56, 62, quoted from 2 Thompson on Real Property, 1961 Replacement § 427, p. 699, as follows:

" 'The right of an owner to an easement and the right of the owner to the land are not absolute, but are so limited, each by the other, that there may be a reasonable enjoyment of both. Where a reservation of a right-of-way is made in a deed, the grantor only retains an easement to use the reserved part as a right-of-way, and the grantee may use the reserved part as he sees fit so long as it does not prevent the grantor from using it. Whether a particular use of the land by the servient owner, or by someone acting with his authorization, is an unreasonable interference is a question of fact for the jury. The owner of the servient estate may build over the easement if the use is not interfered with there being no right to light and air to the easement.' "

Rees also cites *Shedd v. American Maize Products Co.* (1915), 60 Ind.App. 146, 108 N.E. 610, for the proposition that an indefinite easement or right-of-way which is not specifically located or described cannot be established, protected and described by injunction.[7] First, of primary distinguishing importance is the fact that the appeal in *Shedd* was brought from the grant of a permanent injunction. Furthermore, the dispute in *Shedd* centered upon the location and direction that the prolongation of a pipeline would take. The case at bar is concerned with determining the extent of a definitely-located easement.

As stated in 139 A.L.R. § IV, p. 197:

"In general, it may be observed that where the existence or right to an easement, particularly a right of way, is established or clear, the absence of a previous specifically designated location, or the failure to locate or definitely locate it, will not preclude a court of equity from affording injunctive relief for its protection, where there is sufficient competent evidence in connection with its creation, whether by grant, user, acquiescence, or the physical facts or necessities of the situation, etc., to warrant a certain and logical inference that the claimed location, or any particular location, applies to the right, thereby enabling the court to formally locate it in the injunction suit."

---

7. This contention applies only to the G-100, G-200 and G-300 lines. The G-400 line, as earlier noted, was defined in terms of specific width pursuant to a condemnation action.

*See also* 25 Am.Jur.2d Easements and Licenses, § 121, p. 524.

The rule also seems to be softened when applied to issuance of a temporary injunction:

> "[T]he immediate purpose is not to settle the rights of the parties and decide the controversy, but simply to preserve the property, prevent irreparable damage, or maintain the status quo until the final hearing. Most of the cases therefore take the position that the showing of the right need not be an incontestible one, but that sufficient showing is made when the plaintiff 'satisfies the court that his claim is a substantial one, and that there is reasonable ground for doubting the validity of the title of his adversary.' [citations omitted] Consequently, in most of these cases the emphasis is placed upon the remedial aspects of the situation, and upon the showing made of pressing necessity and threatened irreparable injury." 139 A.L.R. § III(a), p. 191.

Even where title to property rights is in doubt, some courts have recognized the rule that trespass on or interference with those rights may be enjoined temporarily pending determination of the merits. *See Taylor v. Nix* (1938), 185 Ga. 536, 195 S.E. 416; 60 A.L.R.2d 310, 346.

For the foregoing reasons we conclude that the trial court did not abuse its discretion in issuing the preliminary injunction.

The order is affirmed.

Lowdermilk, J., (participating by designation) and

White, J. Concur.

NOTE—Reported at 377 N.E.2d 640.