James K. FRANKE, Steven P. Method and Summit Control, Inc., Appellants (Defendants Below),

v.

HONEYWELL, INC., Appellee (Plaintiff Below).

No. 02A04–8706–CV–192.

Court of Appeals of Indiana, Third District.

Dec. 21, 1987.

---

John C. Theisen, Gallucci, Hopkins & Theisen, P.C., Fort Wayne, for appellants.

Edward L. Murphy, Jr., Edward J. Liptak, Livingston Dildine Haynie & Yoder, Fort Wayne, for appellee.

HOFFMAN, Judge.

This interlocutory appeal was brought by the defendants, James Franke, Steven Method and Summit Control, Inc. The defendants are seeking review of a preliminary injunction entered against them at plaintiff's, Honeywell, Inc., request. Defendants, Franke and Method are former Honeywell employees and the injunction was aimed at interpreting and enforcing a noncompetition agreement. On appeal they raise several issues, which are restated as follows:

(1) whether the trial court erred in its findings as to what constitutes Honeywell's proprietary information;

(2) whether the preliminary injunction is overly broad; and

(3) whether the preliminary injunction is erroneous as applied to Franke individually.

For a number of years before December 15, 1986, Franke and Method had been employees of Honeywell, Inc., at its Fort Wayne Building Services Division office. This division of Honeywell is in the business of installing and servicing heating, cooling and temperature control systems, fire alarm systems, building automation systems and energy management computers.

As part of their employment with Honeywell, Franke and Method were each required to execute non-competition agreements. Although these agreements were different in certain particulars, they were very similar in wording and intent. Initially the agreements prohibited each man

from using or disclosing any of Honeywell's proprietary information. The document's preamble defined this information to include the identities of current and prospective customers, contract scope, expiration dates, services, prices and bidding and estimating practices.

Additionally, for one year after ending employment with Honeywell, the agreements prohibited the pair from competing with Honeywell by performing, soliciting or selling a variety of specified services related to Honeywell's building services business. Franke agreed to refrain from performing these services for anyone who was a "contract service customer" at the time he terminated employment. Method's agreement was somewhat broader in that he agreed to refrain from servicing current contract service customers, and potential customers who had already received offers or potential customers for whom offers were then being prepared.

On December 15, 1986, both Franke and Method terminated their employment with Honeywell. Approximately two weeks earlier the two had incorporated Summit Control, Inc. Immediately upon leaving Honeywell, Method and Franke activated Summit Control and began seeking business, much of which duplicated Honeywell's business. It is clear that at least two of Summit Control's new clients were "contract service customers" as of the date that Franke and Method terminated their employment.

On April 7, 1987, Honeywell filed its complaint seeking a preliminary injunction and damages. After a hearing, held on May 18, 1987, the court entered its Findings of Fact and Conclusions of Law. The court's judgment read as follows:

"Upon the above and foregoing Findings of Fact and Conclusions of Law, the Court now orders that the defendants James Franke, Steven P. Method, and Summit Control, be, and they are hereby preliminary [sic] enjoined: (1) From contacting any contract service customer of Honeywell; (2) From performing any services for any Honeywell contract service customer who was a contract service cus-

tomer of Honeywell as of December 15, 1986; and (3) From making any use of Honeywell's proprietary information in an effort to compete with Honeywell, including the use of any proprietary information with respect to the service of Delta Computerized Programs."

On August 17, 1987, the court modified its judgment as follows:

"Court grants Defendants' Motion to Modify in part and therefore modifies the judgment of Preliminary Injunction as to Paragraph (1) and (2) as follows: Paragraph (1) shall be modified to read '(1) From contacting any contract service customer of Honeywell as of December 15, 1986 that was a contract service customer of the Honeywell location from which Defendants' employment was terminated.', and (2) From performing any services for any Honeywell contract service customer who was a contract service customer of Honeywell as of December 15, 1986 at the Honeywell location from which Defendants' employment was terminated', and Paragraph (3) to remain as originally ordered."

■ In general, preliminary injunctions are extraordinary remedies whose sole purpose is to maintain the status quo until the matters at issue can be fully determined. *Kozuch v. CRA–MAR Video Center, Inc.* (1985), Ind.App., 478 N.E.2d 110. A preliminary injunction is not intended to enlarge the plaintiff's rights, nor to ajudicate the merits of the case. *Rees et al. v. Panhandle E. Pipe Line, Co.* (1978), 176 Ind.App. 597, 377 N.E.2d 640. For these reasons it is imperative that the order granting a preliminary injunction be carefully worded to avoid overbreadth or ambiguity.

■ This requirement of exactness and specificity is especially true when a non-competition agreement is being enforced. Non-competition agreements restrain free trade and are not favored by Indiana's courts. *Harvest Ins. Agency v. Inter–Ocean Ins. Co.* (1986), Ind., 492 N.E. 2d 686. Such agreements will be enforced to the extent their terms are reasonable as to time, place and scope; however, in any situation, non-competition agreements are

always strictly construed against the co-vententee, and will never be extended beyond the express terms of the agreement. *Century Personnel, Inc. v. Brummett* (1986), Ind.App., 499 N.E.2d 1160.

In the present case there is little question that Franke and Method violated the terms of their respective non-competition agreements by actually performing services for entities that were contract service customers as of December 15, 1986. It is also apparent that the two intended to continue further contacts with Honeywell's customers. On appeal Franke and Method do not seriously question these findings, nor do they seriously attack the trial court's fundamental finding that some form of injunctive relief was called for. Instead Franke and Method's dispute is with the terms of the injunction.

■ The first issue, on appeal, is directed at the third part of the trial court's judgment which enjoins the use of Honeywell's proprietary information. The trial court accepted, verbatim, Honeywell's definition of what information was proprietary. Accordingly the court enjoined the use of the names of Honeywell's customers, prices, the scope of each contract, and what the court termed as "proprietary information with respect to the service of Delta Computerized Programs." Franke and Method contend that this definition is overbroad, and not supported by sufficient evidence.

A review of the evidence leads to the conclusion that Franke and Method are correct. It is of little importance that Honeywell labeled certain information as proprietary, because the law is clear that what constitutes proprietary or trade secret information is a determination for the court to make as a matter of law. For the type of information involved here the threshold factors for the court to consider are the extent to which the information is known by others and the ease by which the information could be duplicated by legitimate means. *See Woodward Ins., Inc. v. White* (1982), Ind., 437 N.E.2d 59.

The evidence is uncontroverted that the identity of Honeywell's customers, the contract scope and contract expiration dates could be easily duplicated by a canvass of area businesses. Such information was not treated as being especially confidential, by either Honeywell representatives or by their customers. The information regarding the service of Honeywell's Delta Computerized Programs is also clearly not proprietary. The evidence introduced at the preliminary injunction hearing shows that the technical information necessary to service this Honeywell system was readily available from sources unconnected with Honeywell. Therefore the trial court erroneously found this information to be proprietary and erroneously enjoined Franke and Method from using it.

■ The last two issues question whether the trial court exceeded the scope of the non-competition agreement. Franke and Method initially argue that the court improperly enjoined them from performing "*any* services for any Honeywell contract service customer." It is obvious that they correctly argue that the non-competition agreements only prohibit certain specific services and activities. Therefore, on this point as well, the trial court's order is over inclusive and must be modified.

■ Appellants also argue that the trial court's order is ambiguous, because it does not fully define the scope of the term "contract service customer." Specifically, Franke and Method argue that the trial court's order would, for example, prevent them from doing any business with the State of Indiana, because Honeywell services a National Guard Armory and an Employment Security Division Office in Fort Wayne. It is also argued that the order would prevent them from doing business with Allen County, because Honeywell services the City–County Building. It is true that the trial court's judgment does not address this specific issue; however, this Court will not strain to find ambiguities. In this context the term "contract service customer" logically can only refer to the exact services provided to any individual entity under a specific contract. Thus, for example, Franke and Method could not, without violating the non-competition

agreement, provide service to the Employment Security Division Office in Fort Wayne, but other portions of State government would be fair game.

At this point it is important to re-emphasize that, although the terms of the order establishing the injunction are in need of modification, the injunction itself is justified. Honeywell has a legitimate, protectible interest represented by the basic design of the non-competition agreements at issue here. Franke and Method, by their business activities since leaving Honeywell, have infringed on Honeywell's interest and it is apparent that without the preliminary injunction the infringement would continue. Of course, the fact that Honeywell is entitled to a preliminary injunction does not create an entitlement to any protection beyond the exact terms of the agreement nor beyond what is legally reasonable.

■ The final issue on appeal only disputes the terms of the injunction as related to Franke. Franke interprets the slightly different wording of his non-competition agreement to mean that he is only prohibited from performing services that require the use of Honeywell's proprietary information. It is, however, unnecessary to delve into the parties' arcane semantic arguments on this issue, because even if Franke is correct the result reached would not change.

There is no question that Method's non-competition agreement prohibits him from performing specified services, whether proprietary information is used or not. Franke and Method are Summit Control's incorporators, officers and sole employees, and, accordingly, Summit Control is bound by Method's allegedly more encompassing agreement. Consequently, Franke, as a Summit Control employee, is also bound by Method's agreement, since to hold otherwise would permit circumvention of the agreement.

In summation, then, the trial court's judgment ordering the preliminary injunction is affirmed, but the terms of the injunction are modified. Specifically, the trial court's findings as to what constitutes Honeywell's proprietary information are stricken and the injunction is modified to only prohibit activities that are specifically stated in the agreements. In all other things the trial court is affirmed.

CONOVER, J., concurs.

SULLIVAN, J., dissents and concurs with opinion.

SULLIVAN, Judge, dissenting in part and concurring in part.

I concur in all that the majority opinion says with the exception of its conclusion that there is some basis for injunctive relief as to James Franke.

There is, in my view, a substantial difference between the agreement made by Franke and that made by Method. Franke agreed, in pertinent part, as follows:

"(c) During the one-year period immediately following termination of my employment with HONEYWELL, I will neither directly nor indirectly render services to a business, owned solely by myself or jointly with others, or to any other person, corporation, or other organization, involving the solicitation, sale, or performance of inspection, servicing, maintenance or repair services relating to temperature control, air conditioning, heating, ventilating or other environmental control equipment systems requiring the use of HONEYWELL proprietary information to or at any facilities of any existing CONTRACT SERVICE CUSTOMER of the HONEYWELL Building Services Division location at which my employment with Honeywell terminates." Record at 311.

This agreement precludes Franke's activity only if it requires the use of proprietary information. On the other hand, Method's agreement precluded him from competition without regard to whether such competition involved proprietary information.

The majority opinion invalidates the preliminary injunction with reference to the attempted preclusion of use of proprietary information. The underpinning for any appropriate injunctive relief against Franke is therefore destroyed.

For this reason I would reverse the judgment as to James Franke. I otherwise concur in the majority opinion.